[No. 16078. Department Two. May 3, 1921.]

D. C. KEITH, *Respondent*, v. W. H. PEART *et al.*,
*Appellants.*[1]

BROKERS (19)—CONTRACT FOR COMMISSIONS—PERFORMANCE—SALE BY OWNER. In an action for a broker's commission for the sale of farm land, the defendants were not entitled to a nonsuit on the ground that they had entered into a contract with the broker's customer on other terms after the failure of the broker to consummate a sale on the terms specified in his contract, where the evidence showed the broker had a contract for a term of 5½ months; that he interested a prospective purchaser who was unwilling to pay the stipulated price; that the customer and defendants took up negotiations independent of the broker and entered into an agreement of sale, at the price at which the land had been listed with the broker, less the amount of the latter's commissions; and that the purchaser had been placed in possession of practically the whole of the land and was farming it under his purchase contract with the owner.

SAME (19). Where an owner of land employed a broker to make a sale, and a purchaser ready, able and willing to buy was produced, with whom the owner independently of the broker entered into an option contract of sale, the owner cannot set up such option contract to defeat the broker's right to commissions, on the theory that it was a contract which the broker was not authorized to make.

SAME (32)—ACTION FOR COMMISSIONS—EVIDENCE—ADMISSIBILITY. In an action for broker's commissions, the plaintiff's testimony of a conversation with the prospective purchaser, to whom the owner

[1]Reported in 197 Pac. 928.

later made a direct sale, to the effect that such purchaser objected to the terms, and the broker took up with the owner the matter of reducing them, was admissible as tending to show the labor performed in interesting the purchaser, and as a circumstance for the jury to consider in determining which of the parties was the procuring cause of the sale.

SAME (32). In a broker's action for commissions on the sale of land, evidence of his having suggested the advisability of taking out term insurance to a prospective purchaser, who was reluctant to undertake a large future indebtedness necessary in case of purchase, was admissible as showing the broker's efforts to overcome an obstacle in the way of a prospective sale, it appearing that the purchaser after buying directly from the owner did take out such insurance.

SAME (33)—ACTION FOR COMMISSIONS—QUESTION FOR JURY. A directed verdict for a broker, suing for his commissions under a contract which did not negative the right of the principals to make a sale, was erroneous, where the issue was whether or not the broker was the efficient, procuring cause of a sale made by the principals directly to a purchaser with whom the broker had negotiations pending at the time.

FRAUDS, STATUTE OF—REAL PROPERTY—BROKER'S CONTRACT FOR COMMISSIONS. A contract with a broker for the sale of lands, being required by the statute of frauds to be in writing, cannot be limited by an oral understanding excepting a designated individual as a prospective purchaser.

BROKERS (32)—ACTION FOR COMMISSIONS—EVIDENCE—ADMISSIBILITY. In an action by a broker for commissions on the owner's sale made directly to a purchaser, alleged to have been procured by the broker, evidence of conversations between the broker and purchaser with respect to negotiations with other prospective purchasers is admissible on the issue of whether the broker was the procuring cause of the sale.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered June 15, 1920, directing a verdict in favor of plaintiff, in an action on contract. Reversed.

*John M. Gleeson,* for appellants.

*J. D. McCallum,* for respondent.

MITCHELL, J.—The respondent, who was plaintiff below, brought this action against the appellants to re-

cover the sum of $2,880, alleged to be due as commission for the sale of real property belonging to the appellants. The trial was had before a jury and at the conclusion of the testimony of both sides, upon motion, the trial court directed a verdict for the respondent in the sum of $2,880. From a judgment entered upon the verdict, this appeal has been taken.

Respondent was a real estate agent at Davenport, Washington. On December 16, 1919, and for some years prior thereto, the appellants, husband and wife, were the owners of nine hundred and sixty acres of wheat land near that city. They listed it for sale with the respondent on December 16, 1919, by entering into a written contract with him. The contract appears to comply with the statute of frauds (Rem. Code, § 5289) and was to continue until June 1, 1920, and thereafter until terminated by giving ten days' notice in writing. It provided the land should be sold for $96,000 with a cash payment of $10,000, the balance on specified time, and fixed the agent's commission at three per cent of the sale price. On December 17, 1919, respondent called on Mr. and Mrs. Shook and opened negotiations for the sale of the farm to them. There was testimony on the part of the respondent to show that they objected to paying $100 per acre and requested respondent to see the appellants to ascertain if it could be purchased at $95 per acre; that respondent at once saw the appellants and told them of negotiating with the Shooks but the appellants objected to taking less than $100 per acre; that he then went back to see the Shooks, repeated appellants' unwillingness to sell at less than $100 per acre and continued his negotiations with them to sell at the latter price; that on the evening of December 17, appellant W. H. Peart went to respondent's office, discussed the matter, and asked respondent if

he would cut the commission agreed on provided they decided to sell at $95 per acre; that a few days later, Mr. Shook had another talk with respondent at the latter's office about purchasing the property and at still another time a talk with a salesman in the real estate office of the respondent.

Respondent's proof further shows that on December 31, he made still further effort to sell to Mr. Shook, at which time the latter promised he would see him the next day and let him know if he would take the place; that on the next day, Mr. Shook did not call on respondent but went to Spokane with the appellant W. H. Peart and entered into a contract with him for the purchase of the land; and that on that afternoon, at the suggestion of Shook, appellant W. H. Peart telephoned to the respondent that the land was sold. The contract between appellants and Shook fixed the price of the land at a sum equal to the price at which it was listed with the respondent less the commission to be paid, viz, $93,120, and was signed on January 2, 1920, at which time $1,000 was paid to appellants by Shook. There is further proof that although appellants were still residing on the place at the time of the trial in May, 1920, that nevertheless the whole of the remainder of the land had been surrendered to Mr. Shook for whom appellant W. H. Peart was working in the raising of wheat; and that the time for him to make another payment to Peart had been extended until after the 1920 crop of wheat was harvested, when $10,000 was to be paid.

On the contrary, the evidence for the appellants shows that Mr. and Mrs. Shook were farmers and for ten years had resided on a farm that joins the Peart farm on the north; that they were thoroughly familiar with the property involved; that on a number of oc-

casions, some of which were just prior to the date of respondent's brokerage contract, Mr. Peart had discussed the sale of the farm with Mr. Shook who was already interested and had made an offer for the farm; that when respondent spoke to Shook about selling the place on December 17, the latter told him he already knew all about the farm—more than the agent did; that he did not offer the agent $95 per acre but did say he would not give $100 per acre; that the appellant W. H. Peart and Shook went to Spokane together and after reaching that city they arrived at an agreement, reduced to writing, which though somewhat uncertain as to the time of future payments was satisfactory to both parties.

Appellants contend their motion for a nonsuit, at the close of respondent's proof, should have been granted, upon the ground that respondent's contract was to make a sale upon terms specified, and that, as a matter of fact, the transaction finally entered into by the purchaser was only an option to buy. However, Mr. Peart telephoned to the respondent that the place was sold, and the arrangement made with the purchaser was made by the appellants. It was satisfactory to them, each of whom was continuing under the contract at the time of the trial and satisfied with it as a sale. The rule appellants invoke would be applicable if respondent as agent had made the contract with Shook that the appellants made. The contention is like that in the case of *Duncan v. Parker,* 81 Wash. 340, 142 Pac. 657, L. R. A. 1915A 804, where this court said:

"But the rule, we think, is without application to a case presenting facts such as are presented in the case at bar. Here the brokers were not permitted to complete the negotiations pending between themselves and their customer. The owners took the burden of the

negotiations upon themselves, and, without consulting the brokers, entered into a contract of sale of the property with the customer, thereby not only preventing a sale by the brokers to the particular customer, but preventing a sale to the other customer with whom they were authorized to deal. The owners are thus estopped from asserting that the brokers did not furnish a customer ready, able, and willing to take the property on the terms under which they were authorized to make a sale.

"Nor can the owners plead the terms of the contract as a defense of the right of the brokers to recover. The contract entered into for the sale of the property was not the brokers' contract. It was the contract of the owners, with the terms of which the brokers had nothing to do. It may or may not have been the best or only contract the purchasers would enter into. This issue has been placed by the conduct of the owners beyond the possibility of proof; for, conceding that an optional contract is the best and only contract that the owners could make with the purchaser, it by no means follows that the brokers could not have made an actual sale to him on the terms under which they held the property for sale, or on terms satisfactory to the owners. This could only be determined by allowing the brokers to proceed with the negotiations, which privilege the owners, for their own purposes, took away from them. To allow them now to plead the contract as a defense to the right of the brokers to recover, would be to allow one to plead his own independent conduct as a defense to the lawful claims of another. The owners could not make a contract with the brokers' customer so as to defeat their claim for commissions until after the brokers themselves had concluded their negotiations with him."

Objection was made to testimony of the respondent concerning conversations between him and Shook, and reported by respondent to the appellants, looking to a sale at $95 per acre and a cash payment of less than $10,000. It is claimed the testimony was incompetent

and tended to vary the terms of the respondent's written contract to sell at $100 per acre. But we think the testimony was proper as a circumstance for the jury to consider in determining which of the parties was the procuring cause in making the sale. Respondent had told Shook the property was listed with him at $100 per acre which Shook said he would not pay and thereupon the agent suggested, and followed it up, as he testified, that he would see the appellant and try and get him to take $95 per acre and a smaller cash payment. It tended to show the labor performed in interesting and inducing Shook to become a purchaser.

Objection was made also to respondent's testimony, that in his negotiating with Shook he had one or more conversations concerning the advisability of Shook taking out term insurance. It appeared that Shook, for fear of some possible failure of health, expressed reluctance at undertaking so large a future indebtedness as that provided in the terms the respondent was authorized to make. The testimony we think was proper as showing respondent's efforts to overcome an obstacle in the way of the prospective sale, and as a matter of fact the suggestion was adopted by Shook, for he testified that after he purchased from the appellants he did take out $48,000 of term insurance.

The next assignment is that the court erred in directing a verdict for the respondent. This assignment must be sustained. The written authority given the respondent made him an exclusive agent, but did not negative the right of the principals to sell the property themselves. This construction of the contract is admitted by the respondent, who frankly says that, had a sale been made by the appellants without his aid, he would not be entitled to any commission. In his complaint, he alleged that it was by his labor, ef-

forts and negotiations with Shook that the latter was persuaded and agreed to buy the property. In their answer, the appellants denied that the sale was made or brought about either directly or indirectly by or through the efforts and negotiations of the respondent or any one acting for him. This is the test in this case. It is a question as to whether or not the respondent was the efficient, procuring cause of the sale to Shook, exclusive of the more favorable price and terms given by the owners over those their agent was authorized to make, while negotiations were still pending between the agent and Shook. That is to say, if while negotiations were pending between the agent and prospective purchaser, the appellants, or either of them, accomplished the sale by an abatement or reduction in the price or more favorable terms, or by both, and that such reduction or terms or both were immediately the final, inducing cause of the sale, then the agent would be entitled to his commission. *Lawson v. Black Diamond Coal Mining Co.*, 53 Wash. 614, 102 Pac. 759.

That question was one of fact which, under all the testimony in the case, should have been submitted to the jury, rather than determined by the court as a matter of law.

In this connection appellants contend that respondent is not entitled to recover in any event for the reason that at the time of giving the broker's contract they had an oral understanding with the respondent that Shook was already their customer and that respondent should have no right to attempt to make any sale to him. This was denied by the respondent. Appellants' contention is not tenable. Their contract is one under the statute of frauds and required to be in writing. The contract they gave respondent makes no

exception of Mr. Shook or any other person with whom the respondent was authorized to deal.

Since the cause must go back for a new trial, it is necessary that we notice another question suggested in the argument of appellants. Respondent was permitted to testify over objections concerning efforts and negotiations with one Phillips and others for the sale of the property at the same time he was laboring with Shook. Such transactions as independent considerations are immaterial and do not justify recovery on the contract in suit for a commission on the sale made. However, any conversation that may have been had with Shook by the respondent, or any of his real estate agency employees, as to such conversations and negotiations with other prospective purchasers, may be proper as circumstances to be considered by the jury in connection with all the rest of the evidence in determining if the respondent was the procuring cause of the sale made.

Judgment reversed with directions to grant a new trial.

PARKER, C. J., TOLMAN, MAIN, and MOUNT, JJ., concur.