[No. 7572. Decided June 22, 1909.]

EUGENE F. LAWSON, *Respondent,* v. BLACK DIAMOND COAL
MINING COMPANY, *Appellant.*[1]

BROKERS—EMPLOYMENT—COMPENSATION—TIME LIMIT—WAIVER—
SALE EFFECTED. Brokers authorized by a corporation to sell a mine
within sixty days, are entitled to commissions, and the sixty-day
limitation is waived, where the authorized agent of the corporation
thereafter repeatedly urged them to continue their services, and they
were not notified to cease their operations until a year later at a
time when the corporation's agent had effected a sale to the brokers'
customer at a less price, which sale was ratified by the corporation;
as knowledge of the authorized agent was the knowledge of the cor-
poration when it accepted the benefits of the sale.

SAME—AMOUNT OF COMMISSION. Where brokers were authorized
to effect a sale at a certain price at a commission of five per cent.,
and the owner, without terminating the employment, made a sale to
the broker's customer at a less sum, the brokers are entitled to a
commission of five. per cent on the selling price.

APPEAL—REVIEW—HARMLESS ERROR—EVIDENCE—MATTERS OTHER-
WISE ESTABLISHED. In an action triable *de novo* on appeal it is
harmless error to exclude evidence to negative authority to employ
a broker, where the excluded evidence is in the record, and without
regard thereto an authorized employment was subsequently made.

APPEAL—REVIEW—PLEADINGS—AMENDMENTS—DISCRETION. The re-
fusal of a trial amendment to the complaint will not be disturbed
where no abuse of discretion is shown.

Appeal from a judgment of the superior court for King
county, Frater, J., entered January 7, 1908, upon findings
in favor of the plaintiff, after a trial on the merits before
the court without a jury, in an action to recover a broker's
commission. Affirmed.

*Garret W. McEnerney, Wm. M. Cannon, James L. Robi-
son, James B. Howe,* and *C. H. Farrell,* for appellant.

*Hughes, McMicken, Dovell & Ramsey,* for respondent.

CROW, J.—This action, which has heretofore been in this
court, was commenced by Eugene F. Lawson against Black

[1]Reported in 102 Pac. 759.

Diamond Coal Mining Company, a corporation, to recover a broker's commission for the services of himself and of Bruce Cornwall and Maurice McMicken, his assignors. A statement of the issues may be found in our former opinion. 44 Wash. 26, 86 Pac. 1120. From a judgment entered in favor of the plaintiff for $66,935, the full amount of his claim and interest, the defendant has appealed.

The records and briefs are voluminous. Forty-six elaborate findings of fact were made by the trial judge, to which the appellant has filed exceptions. The controlling assignments of error are that these findings are not sustained by the evidence. Many of the findings cover points not essential to a determination of the issues, and it would serve no good purpose for us to enter upon a detailed discussion of all the attacks made upon them. As a result of our examination of the record, we conclude that the findings do show each and every fact necessary to sustain the judgment, and that such facts have been proven by competent evidence, which, in substance, shows: That the respondent, Eugene F. Lawson, and his assignors, to whom we will hereafter refer as respondents, were employed to sell appellant's coal mine; that as brokers they rendered valuable services to appellant, with the result that the Pacific Coast Company, afterwards the purchaser, became interested in the property and authorized J. D. Farrell, its representative, to buy the mine for $1,-500,000, the price at which appellant had then authorized its sale by respondents; that about this time one D. O. Mills, a heavy stockholder in the appellant corporation, without respondents' knowledge or consent, took up negotiations in New York city with certain persons and interests with whom J. D. Farrell was in close association, with the result that before respondents could complete a sale, Farrell concluded the mine could be purchased for less than $1,500,000, which fact he communicated to them; that H. H. Taylor, then president and manager of appellant corporation, after considerable correspondence with D. O. Mills, entered into ne-

gotiations with Farrell, which finally resulted in a sale to the Pacific Coast Company, the respondents' customer, for $1,100,000; that on April 2, 1904, about the time the terms of this sale were agreed upon, Taylor wrote letters to the respondents advising them that they would have no further interest directly or indirectly in any new negotiations; that the sale was then practically consummated; that at no previous time had Taylor or the appellant given any such notice to respondents or any of them, and that Taylor, as president and manager of the appellant, had theretofore urged them to continue their negotiations with the Pacific Coast Company.

Respondents predicate their first claim to employment upon a letter written on April 10, 1903, by P. B. Cornwall, then appellant's president. Appellant strenuously insists that no competent evidence sufficient to show Cornwall's authority to employ respondents appears in the record. We think his authority was proven. Assuming, however, that it was not, respondents predicate a further claim of employment upon a formal resolution adopted by appellant's board of directors on August 26, 1903. The minute book for that date shows the record of two resolutions. The first one, which authorized a sale without limit of time for $1,500,000 at five per cent commission, is stricken by red ink lines drawn through it. Immediately following it is a second resolution substantially the same, except that it expressly provides that upon the expiration of sixty (60) days after its date it shall be null and void and without effect. Respondents contended, and the trial court found, that the first resolution was the one actually adopted, but that it was afterwards wrongfully erased, and the second one was substituted therefor without respondents' knowledge or consent, and without action of the board. This finding, which we think is sustained by the evidence, is vigorously assailed by the appellant, its contention being that the only resolution which was actually adopted

by the board was the second one containing the sixty-day limitation.

Assuming the appellant's contention in this regard to be supported by the preponderance of the evidence, still the record convinces us that the appellant afterwards waived such sixty-day limitation, for the reason that Taylor, its authorized agent, urged respondents to continue their negotiations for a sale of the mine, and induced them to do so. In *Ice v. Maxwell*, 61 W. Va. 9, 55 S. E. 899, the first and second syllabi, which state the substance of the opinion on this point, read as follows:

"Where an agent is empowered to procure a purchaser for real estate within a stipulated time, and is to receive a certain compensation for his services, he will not be entitled to recover such compensation unless he furnishes a purchaser within that time.

"But where the owner or principal has waived the performance of the contract within the time agreed upon, and accepts the services of the agent and recognizes and treats the contract as still in force, the agent will be entitled to compensation."

At the meeting of August 26, 1903, appellant's board of directors, by another resolution without limitation as to time, appointed Taylor and one Drum, another director, a committee to conduct any and all negotiations with brokers as to the sale of the coal mine, subject to the board's approval. Drum does not appear to have done anything in the premises, but Taylor did. He repeatedly urged the respondents to continue their services, after the expiration of the sixty-day period. He at the time knew that D. O. Mills was engaged in negotiations with eastern parties, being in correspondence with him. He also acted himself by conducting personal negotiations with Farrell. The indisputable fact is that in some manner a sale was effected to the respondents' customer, the Pacific Coast Company, and later ratified by the appellant's board of directors. Taylor had unlimited authority to deal with the brokers, subject only to

the control of appellant's board. He knew the condition of the minutes, and could have avoided any misunderstanding by formally ordering respondents to cease their efforts. When he reported the sale to the board, he must be presumed to have reported all his acts, including his dealings with the respondents. If he failed to do so, respondents should not be losers by reason thereof. Under the circumstances shown, his knowledge must be considered the knowledge of the board, and when it closed the deal, having such knowledge, it ratified his acts. It could not accept the benefits of the sale for the consummation of which respondents had labored at Taylor's request, and at the same time refuse to compensate them for their services. After the sale had been practically agreed upon, it was too late for Taylor to relieve appellant from liability to respondents by writing his letter of April 2, 1904. Conceding that the respondents' time for making the sale had then expired, under the alleged sixty-day resolution, yet under the facts and circumstances shown by the records, they are entitled to recover.

In *Chilton v. Butler*, 1 E. D. Smith (N. Y.) 150, the court said:

"If vendors were permitted to employ brokers to look up purchasers, and call the attention of buyers to the property which they desired to sell, limiting them as to terms of sale, and then, while such purchasers were negotiating, take the matter into their own hands, avail themselves of the labor, services and expenses of the broker in bringing the property into market, and accomplish a sale by an abatement in the price, and yet refuse to pay the broker anything, the business of a broker would not be worth pursuing; gross injustice would be done; every unfair and illiberal vendor would limit his property at a price slightly above the market, and make use of the broker to bring it into notice, and then make his own terms with the buyers, who were in reality procured by the efforts of the agent."

This language, which has since been quoted with approval by Grant, J., in *Heaton v. Edwards*, 90 Mich. 500, 51 N. W. 544, and by Sharswood, J., in *Keys v. Johnson*, 68 Pa. St.

42, we regard as especially pertinent to the facts and circumstances of this case.

Appellant assails the amount of the commission or compensation awarded the respondents. The trial court allowed five per cent on $1,100,000, the selling price, with interest thereon from the date of sale. The record shows that at all times the contemplated commission was fixed on a five per cent basis. It is not disputed that the appellant actually agreed to pay five per cent on $1,500,000, in the event of a sale at that price. When it afterwards voluntarily reduced the selling price, the respondents were entitled to a ratable commission on such reduced price. In *Martin v. Silliman*, 53 N. Y. 615, the second syllabus reads as follows:

"Where a broker, who is employed to sell property at a given price and for an agreed commission, has opened a negotiation with a purchaser, and the principal, without terminating the agency or the negotiation so commenced, takes it into his own hands and concludes a sale for a less sum than the price fixed, the broker is entitled at least to a ratable proportion of the agreed commission."

Appellant contends that the trial court erred in rejecting its offer in evidence of certain minutes of the proceedings of its board of directors. These offers were made to negative the respondents' contention that P. B. Cornwall, then president, had authority to act for appellant without the formality of a resolution of its board of directors, when he wrote the letter of employment on April 10, 1903, and that he transacted business generally for appellant without formal authority from its board. The minutes offered and rejected have been read into the record, and are now before us for consideration, if competent. We fail to see that any prejudicial error was committed by their exclusion, for without regard then to his authority, we have found, from other competent evidence, that an authorized employment of the respondents was subsequently made.

This action was commenced August 2, 1904, and was called for trial on November 18, 1907, at which time the appellant,

being a California corporation, asked permission to amend its answer and plead certain statutes of that state. It now contends that the trial court erred in refusing the amendment. It was within the discretion of the trial judge to allow or refuse the amendment at that time, and no abuse of such discretion has been shown. We find no prejudicial error in the record. The judgment is affirmed.

ALL CONCUR.