[No. 16147. *En Banc.* September 8, 1921.]

HARRY S. KING et al., *Appellants,* v. SECOND AVENUE
INVESTMENT COMPANY, *Respondent.*[1]

EVIDENCE (173)—PAROL EVIDENCE TO VARY WRITING—RELATION OF
ORAL AGREEMENT TO WRITING. Where a broker's contract for a com-
mission had alternative provisions, one in writing and one oral,
which were not inconsistent, evidence of the oral stipulation is not
contradictory of the written stipulation.

BROKERS (27)—CONTRACT OF EMPLOYMENT—COMPENSATION—RATE
OR AMOUNT. Where brokers are employed under a written contract
to procure a loan in a stated amount for principal and interest, and
subsequently, under an oral contract, are instrumental in procuring
the loan for a less sum at a greater rate of interest, their compensa-
tion is measurable at the same rate as provided in the written con-
tract, in the absence of any alteration by the terms of the oral under-
standing.

MACKINTOSH, J., dissents.

Appeal from an order of the superior court for King
county, Allen, J., entered May 22, 1920, granting a new
trial, after the verdict of a jury rendered in favor of
the plaintiffs, in an action on contract. Reversed.

*Flick & Paul,* for appellants.

*Ballinger, Battle, Hulbert & Shorts,* for respondent.

PARKER, C. J.—The plaintiffs, King and others, com-
menced this action in the superior court for King coun-
ty, seeking recovery from the defendant investment
company of compensation for services rendered in
procuring a $300,000 mortgage loan upon its office
building in Seattle. The trial in the superior court,
sitting with a jury, resulted in a verdict awarding to
the plaintiffs recovery in the full amount prayed for.
Upon motion made in behalf of the defendant, a new
trial was granted by the court and an order entered
accordingly, from which the plaintiffs have appealed
to this court.

[1]Reported in 200 Pac. 572.

By a recital in the order granting a new trial, specifically referring to the written opinion of the trial court announced at the time of entering the order, which written opinion is made a part of the record by being embodied in the statement of facts, it is made to appear that the granting of the new trial was by the superior court rested solely upon what it conceived to be error committed by it, as claimed by counsel for respondent, in receiving certain evidence and giving certain instructions, which had the effect of submitting to the consideration of the jury two inconsistent contracts for the payment of the compensation sought by appellants to be recovered; that is, in submitting to the consideration of the jury evidence of an oral contract, as it is claimed, tending to vary and contradict the terms of a written contract covering the same subject-matter. We do not understand counsel for respondent to seriously contend that error was otherwise committed by the trial court which would call for a new trial. In any event, we think there was no other error committed by the trial court which would warrant the granting of a new trial. So our inquiry is whether or not the trial court was warranted in granting a new trial because of its rulings submitting the case to the jury as above noticed. The trial judge, in the beginning of his opinion referred to in the order granting a new trial, said:

"The grounds urged in support of both motions (for new trial and judgment notwithstanding the verdict) are objections that appear primarily upon the face of the pleadings and are a renewal of timely objections made throughout the course of the trial."

It seems to us, as it evidently did to the trial judge, that the facts alleged in the complaint are practically all that need to be looked to in determining the question of whether or not respondent is entitled to a new

trial; since the case was tried and submitted to the
jury upon the theory of the facts therein pleaded; their
sufficiency to warrant recovery being challenged by de-
murrer, by answer, and by appropriate timely objec-
tions to the introduction of evidence, especially objec-
tions to the introduction of evidence to show an oral
understanding between the parties in addition to that
evidenced in writing. The claims of errors in giving
the instructions also present the same question. The
allegations of the complaint necessary to be here
noticed, showing the theory upon which appellants
prosecuted their case, are as follows:

"That on or about March, 1917, said plaintiffs were
cooperating jointly to place loans in the city of Seattle
and elsewhere, and that while so engaged, said defend-
ant was seeking a loan in the approximate amount of
$350,000 to be placed on its building in Seattle, known
as the Railway Exchange Building.

"That said parties met, and during the course of
the negotiations said defendant agreed to employ plain-
tiffs to assist in obtaining a loan for it, under terms in
part expressed in a certain letter of direction or con-
tract executed and delivered to one of said plaintiffs,
George B. Riley, true copy of which follows:

" 'Mr. George B. Riley,                    March 23, 1917.
" '404 East Union St.,
" 'Seattle.

" 'Dear Sir: I have this day made an informal ap-
plication for the loan of $350,000 to Mr. G. Wallace
Simpson of Philadelphia as per your suggestion, and
have sent him a complete statement of the earnings
and expenses of the Railway Exchange Building cover-
ing from March 1st, 1916, to March 1st, 1917, and, if he
will make this loan at 5% as applied for we will pay
you a brokerage of 2½% commission.

" 'Yours truly,
" 'FRANK T. HUNTER,
" 'Sec. Second Ave. Inv. Co.
" 'Owners.'

"That while, at the time above referred to, the amount of said loan was fixed at $350,000, it was understood that it was doubtful as to whether the building would carry a loan of such an amount, and it was distinctly understood and orally agreed as a specific inducement thereto, that in the event that the party named in said letter or his associates were disclosed to said defendant, and a lesser amount than the loan suggested in said contract was finally accepted by said defendant, or if said loan might be somewhat changed in its other terms, that in that event, if the loan were still consummated through the parties disclosed by plaintiffs herein, said defendant orally agreed to and stated it would still be bound to pay the same rate of commission upon such loan as so altered, and that thereupon, and solely because of said inducement, said plaintiffs disclosed the name of said Simpson to said defendant.

"That said Riley accepted said contract in a representative capacity for himself and plaintiffs herein jointly,   .  .  .

"That on or about July 17th, it became evident to plaintiffs and defendant that said G. Wallace Simpson could not obtain a loan of over $300,000, upon said building through or from the sources that he was dealing with,  .  .  .   That at said time an offer was communicated by said Simpson and by the said plaintiffs to said defendant to loan the amount of $300,000 at 5% on said building, correspondence to said effect being had directly between Simpson and said defendant, from which said defendant well knew, as it had known from the beginning, that the said Simpson was an independent broker acting as an intermediary between said second party and the said loaning sources   .  .  .

"That said defendant delayed in accepting  said proposition in several attempts to raise said amount to $330,000, in which attempt defendant sought and received the help of said plaintiffs.

"That from about August 31, 1917, and at the time when defendant knew that said Simpson could not induce his associates or his loaning sources,  .  .  . to loan over $300,000 upon said premises, said defendant

kept urging plaintiffs to use their influence and exert effort to have said Simpson seek to have his source of loans grant a loan of $300,000, which plaintiffs agreed to do and did do.

"That on or about September 12, 1917, defendant practically closed a loan of $300,000 at 5½% through, and with the influence of the office of G. Wallace Simpson, of Philadelphia, the party mentioned in the contract already referred to in this complaint, and on or about October 25, 1917, fully closed said loan, and said Second Avenue Investment Company accepted same through said Simpson from the Metropolitan Life Insurance Company, all of which was accomplished through the efforts of plaintiffs in said matters, and by putting said defendant in touch with said party named in said writing and referred to in the oral understandings set out in this complaint.

"That, though repeatedly requested, defendant has refused to pay said sum or any part thereof, except the sum of $80 paid to said George B. Riley on September 20, 1917.

"Wherefore, plaintiffs pray judgment against said defendant in the sum of $7,420, with interest at the rate of 6% from October 25, 1917, together with their costs and disbursements herein legitimately to be taxed."

These allegations, it seems to us, evidence an intent on the part of appellants to claim recovery upon one contract, partly in writing and partly oral. If there had been a loan of $350,000 finally consummated by respondent as a result of the efforts of appellants, it might be true that the portion of the contract evidenced in writing would have been the only portion of it necessary for their recovery to rest upon. That, however, did not occur; but a loan of $300,000 was finally consummated by respondents as a result of the efforts of appellants, as alleged in the complaint and found by the jury. It seems to us of but little consequence whether we regard appellants' employment by

respondent as one contract, partly in writing and partly oral; or as two separate contracts, one in writing and the other oral. We are quite unable to see that there is any inconsistency of one part with the other, viewing the whole as one contract; or of one contract with the other, viewing them as separate contracts. The oral portion of the one entire contract viewed as such, and the separate oral contract viewed as such, was merely an alternative agreement prescribing the measure of appellants' compensation in the event a loan of less amount was consummated as the result of respondent's efforts. How can it be said that the two contracts, or the two portions of one contract, though concerning the same general subject-matter, are inconsistent or in the least tend to destroy each other, when it is manifestly intended by their terms that one is merely the alternative of the other, each to be controlling of the rights of the parties according as one or the other of two contemplated possible events may occur, it being plain that both cannot occur? We think this is one contract with alternative stipulations, one in writing and one oral, which are not in the least inconsistent, and that evidence of the oral stipulation is not contradictory of the written stipulation. The following authorities lend support to this conclusion: *Johnson v. McCart*, 24 Wash. 19, 63 Pac. 1121; *Welever v. Advance Shingle Co.*, 34 Wash. 331, 75 Pac. 863; *Elmendorf v. Golden*, 37 Wash. 664, 80 Pac. 264; *Potlach Lumber Co. v. North Coast Produce Co.*, 78 Wash. 533, 139 Pac. 496; 10 R. C. L. 1038.

It might well be argued, even had there been no specific oral agreement plead or proven, that appellants could have recovered compensation in the form of a commission measurable by the rate specified in the letter, computed upon the amount of the loan that was

finally procured by respondent as a result of appellants' efforts. However that may be, we see no escape from the conclusion that the pleading of, and proving to the satisfaction of the jury, the existence of such oral alternative agreement, and of the services of appellants rendered thereunder at the instance of respondent, entitle appellants to recover compensation measurable by the same rate of commission as upon a $350,000 loan. This conclusion finds support, in addition to the authorities above cited, in *Lawson v. Black Diamond Coal Mining Co.*, 53 Wash. 614, 102 Pac. 759, and *Peterson v. St. Francis Hotel Co.*, 61 Wash. 378, 112 Pac. 347. In the *Lawson* case, there was a commission agreement by which the plaintiff was to receive five per cent on a sale of the property of the mining company for $1,500,000. The plaintiff produced a purchaser who, upon direct negotiations with the mining company, finally purchased the property for $1,100,000, the plaintiff continuing his efforts to the last, looking to the bringing about of the sale, he being at no time discharged by the mining company. He sought recovery of five per cent commission computed upon the $1,100,000. Answering the contention made in behalf of the mining company that such sale was not one for which it had agreed to pay the plaintiff a commission, Judge Crow, speaking for the court, said:

"Appellant assails the amount of the commission or compensation awarded the respondents. The trial court allowed five per cent on $1,100,000, the selling price, with interest thereon from the date of sale. The record shows that at all times the contemplated commission was fixed on a five per cent basis. It is not disputed that the appellant actually agreed to pay five per cent on $1,500,000, in the event of a sale at that price. When it afterwards voluntarily reduced the selling price, the respondents were entitled to a ratable commission on such reduced price. In *Martin v.*

*Silliman,* 53 N. Y. 615, the second syllabus reads as follows:

" 'Where a broker, who is employed to sell property at a given price and for an agreed commission, has opened negotiations with a purchaser, and the principal, without terminating the agency or the negotiation so commenced, takes it into his own hands and concludes a sale for a less sum than the price fixed, the broker is entitled at least to a ratable proportion of the agreed commission.' "

We are reminded by counsel for respondent that the *Lawson* case was an action on *quantum meruit,* and to so show they refer us to the statement of the facts of that case made by this court upon a former appeal reported in 44 Wash. 26, 86 Pac. 1120, wherein it was stated that the complaint alleged "that the reasonable and agreed value of the services so performed is five per cent of the sum for which the said property sold, or $55,000." If that were an action to recover upon *quantum meruit,* it was also an action to recover upon a contract and a seeking to have the compensation measured by the terms of the contract. The above quotation from the decision finally rendered by this court we think plainly shows that the plaintiff was entitled to have it so measured. In the *Peterson* case, it does appear that the action was solely upon *quantum meruit.* The plaintiff was awarded recovery accordingly for a sum considerably less than he would have been entitled to, measured by his agreed commission; that is, he was not seeking and did not recover compensation measured by the agreed commission applicable to a higher price at which it was contemplated the property would be sold. A critical reading of that case renders it plain that had he claimed compensation measured by such stated commission he would have been entitled to recover accordingly, though the

price at which the property was ultimately sold was considerably less than that at which it was contemplated it would be sold when he took the agency for the sale of it. He was never discharged from his agency by the defendant, and apparently the defendant took over the negotiations and closed the sale itself at the less price. Judge Morris, speaking for the court, said:

"In undertaking to sell at a less price than the one given to respondent, and at other terms, it could not deprive respondent of the benefit of his contract. He was still entitled to his commission, to be determined by the terms of sale agreed upon between appellant and its vendee. *Lawson v. Black Diamond Coal Co.*, 53 Wash. 614, 102 Pac. 759. In this case the recovery sought was the reasonable value of the services. The respondent could, to that extent, waive his contract and recover the reasonable value of his services which, according to the testimony, is the amount fixed in the judgment, and the same is affirmed."

In view of the holdings in these cases, wherein there was not involved any express agreement as to the amount of compensation the agent should receive upon the sale being consummated at a less price than that originally contemplated, it seems to us there is little or no room for successfully arguing that appellants in this case are not entitled to recover as found by the jury.

It will be noticed in the above quotation from the trial court's opinion rendered upon the granting of the motion for a new trial, that respondent's motion for judgment notwithstanding the verdict was at the same time denied. We do not understand that counsel for respondent seriously contend here that it was entitled to a judgment of dismissal as a matter of law; that is, judgment notwithstanding the verdict. If, however, counsel for respondent deem that they have made such contention in their briefs filed in this court, we

deem it sufficient answer to say that we have carefully read all of the evidence found in the record as embodied in their abstract thereof and are fully convinced that respondent was not entitled to such judgment.

We conclude that the cause was properly submitted to the jury by the trial court; that it was error to grant respondent a new trial; and that judgment should have been entered upon the verdict. The order granting a new trial is reversed, and the cause remanded to the superior court with directions to enter judgment upon and in compliance with the verdict of the jury.

FULLERTON, MAIN, BRIDGES, HOLCOMB, and TOLMAN, JJ., concur.

MACKINTOSH, J. (dissenting)—The complaint in this action was founded upon a contemporaneous oral agreement. Testimony was introduced to establish such an agreement, and the trial court submitted the case upon that theory. On appeal, the case was presented upon an entirely different theory. Under the instruction of the court, the only possible theory upon which the jury was justified in returning a verdict was the finding by it that a contemporaneous oral contract had been entered into. The trial court was correct in granting a motion for a new trial for the reason that these instructions were improper.

The new trial also should have been granted for the reason that the court submitted to the jury a question which was for the court's determination, that is, it allowed the jury to construe the contract when it instructed the jury that, if it should find from the evidence that "the subject-matter of the discussion was fairly and clearly embodied in a written memorandum," such construction should affect its verdict. It

was a question of law as to whether the written contract required explanation or interpretation, and as to whether the subject-matter was fairly and clearly embodied. *Creagh v. Equitable Life Ass'n Soc.,* 19 Wash. 108, 52 Pac. 526.

The written agreement concerned a loan for $350,000 at five per cent interest, and allowed a brokerage for such loan. The oral contract provided for a less amount, was not limited as to the rate of interest, and contained a contingency providing for the disclosure of the name of the person lending the money. The oral contract covers the identical material provisions of the written contract and varies every one of them in every regard. The oral agreement is thus clearly in conflict with and varies the written contract. *Ross v. Portland Coffee & Spice Co.,* 30 Wash. 647, 71 Pac. 184; *Minnesota Sandstone Co. v. Clark,* 35 Wash. 466, 77 Pac. 803; *Newell v. Lamping,* 45 Wash. 304, 88 Pac. 195.

It is to be remembered that this is not an action to recover the reasonable value of the services rendered, which compensation the appellants would have been probably entitled to in a proper proceeding.

Nor does the evidence in the case entitle the appellants to a pro rata commission. The case of *Lawson v. Black Diamond Coal Mining Co.,* 53 Wash. 614, 102 Pac. 759, is clearly distinguishable from the case at bar, in that in the *Lawson* case the principal, without terminating the agency, took the matter into his own hands and concluded it at a sum less than the price fixed in the agreement, and on account of this action, which amounted to fraud, the agent was allowed a ratable proportion of the agreed commission. No such facts exist in the case before us. Furthermore, in the *Lawson* case it clearly appeared throughout the whole

transaction that a commission was agreed to be paid upon the selling price of the property. Had a loan been procured in the case at bar in the amount set out in the written agreement, and at the rate of interest there provided, and had the respondent then interfered and arranged for a lesser loan, the decision in the *Lawson* case would be perfectly applicable. The foundation of the *Lawson* case is that the agent is entitled to a pro rata commission when he has substantially complied with the terms of the contract, or where the owner has interfered with the transaction.

For the reasons that the case was tried upon an improper theory; that it was tried upon one theory below and another one here (see *O'Brien v. Griffiths & Sprague Stevedoring Co.*, 116 Wash. 302, 199 Pac. 291); and because the jury was improperly instructed, I am of the opinion that the action of the trial court in granting a new trial should be affirmed, and therefore dissent from the majority opinion.