**ST. PAUL FIRE & MARINE INSUR-
ANCE COMPANY, a Corpo-
ration, Appellant,**

v.

**TENNEFOS CONSTRUCTION CO., Inc.,
a Corporation, Appellee.**

No. 19020.

United States Court of Appeals
Eighth Circuit.

June 28, 1968.

Rehearing Denied Aug. 14, 1968.

**624**

Ellsworth E. Evans, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for appellant; Robert C. Heege, of the same firm, Sioux Falls, S. D., and Wattam, Vogel, Vogel, Bright & Peterson, Fargo, N. D., were on the briefs with Ellsworth E. Evans.

Norman G. Tenneson, of Tenneson, Serkland, Lundberg & Erickson, Fargo, N. D., for appellee; Harold A. Dronen, of the same firm, Fargo, N. D., was on the brief with Norman G. Tenneson.

Before MEHAFFY, GIBSON, and HEANEY, Circuit Judges.

GIBSON, Circuit Judge.

The main issue presented in this case and on this appeal concerns the coverage afforded by a contract bond issued to a member of a joint venture indemnifying that member against all loss sustained by reason of the other member's failure to comply with any of the terms of the joint venture agreement. The District Court for North Dakota held that the bond covered the loss in question and entered judgment for $147,591.22 and costs against the appellant and defendant below, St. Paul Fire & Marine Insurance Company. Diversity jurisdiction was established. A timely appeal was filed. We affirm.

The facts are lengthy but for the most part are stipulated or are not in dispute.

On May 21, 1955 Tennefos Construction Co., Inc. (Tennefos) and Ed Cox & Son, a partnership, (Cox)[1] submitted a joint proposal to the South Dakota Highway Commission for the construction and improvement of United States Highway No. 16, in Lyman County, South Dakota. In anticipation of formalizing the contract with the State Highway Commission, Tennefos and Cox executed a joint venture agreement on

---

1. The parties will be referred to as listed below or by their abbreviated name designation. Ed Cox & Son, a partnership, will be referred to as an entity.

June 4, 1955, which provided for a division of the work between them and the compensation to be paid Cox for its part of the project. Under this agreement Cox was to provide the labor and material necessary to construct the sand and gravel sub-base of the road project and was to "furnish a satisfactory contract bond in the penal sum of $199,334.25 payable to the second party (Tennefos) as obligee similar in form to the contract bond required by the South Dakota State Highway Commission from the parties hereto, and pay the premium therefor." In line with Cox's bond obligation under the joint venture agreement it, as principal, and the St. Paul Fire & Marine Insurance Company (St. Paul), as surety, executed a contract bond under date of June 14, 1955 agreeing to indemnify the obligee Tennefos for "all loss" that Tennefos might sustain by reason of Cox's failure to comply with any of the terms of the joint venture agreement.[2] The bond was called a "contract bond" and was on a regular form prepared and supplied by St. Paul.

The formal contract between the State Highway Commission and Tennefos and Cox, as contractors was dated August 25, 1955, and provided that "The said Contractor further agrees to pay all just claims for materials, supplies, food, tools, appliances, and labor, and all other just claims incurred by him  *  *  *

and further agrees that the contract bond shall be held to cover all such claims."

In accordance with the requirements of the highway contract Tennefos and Cox, as principals, and United Pacific Insurance Company (United Pacific), as surety, on August 31, 1955 furnished a performance bond running to the State of South Dakota as obligee in the sum of $408,671.84. As part of the consideration and as an inducement for United Pacific's execution of the performance bond Tennefos agreed to indemnify United Pacific.[3]

Cox was short of capital and in order to carry out its obligations under the joint venture agreement Cox borrowed money from the Farmers State Bank of Flandreau, South Dakota (Bank). On March 23, 1956 St. Paul notified Tennefos that "*  *  * there are numerous unpaid bills on the part of Ed Cox and Son for work and materials furnished" and requested that "*  *  * no further funds on this job be released to Ed Cox and Son, in order that our position under the captioned bond, in which you are obligee, should not be prejudiced in any way."

St. Paul then under date of April 3, 1956 wrote to the Bank requesting the Bank to exercise certain control over future advances made to Cox on this project.[4] Although the record is not

2. The pertinent clause reads:
   "Now, Therefore, the condition of the foregoing obligation is such that if the Principal shall indemnify the Obligee for all loss that the Obligee may sustain by reason of the Principal's failure to comply with any of the terms of said contract, then this obligation shall be void; otherwise it shall remain in force."

3. The pertinent part of Tennefos's indemnity agreement contained in the application for contract or bid bond reads as follows:
   "To indemnify, and keep indemnified, the Company, against all loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefor, sustained or incurred by the Company

by reason of executing or procuring the execution of any said bond or bonds, *  *  * or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith,  *  *  *. Payment of any such amounts to the Company shall be made by the undersigned as soon as the Company shall be liable therefor, whether or not it shall have paid out any portion thereof."

4. The pertinent part of the letter reads:
   "To resume operations on this project, it would appear that Ed Cox & Son will need some financing to meet payrolls and material bills, and equipment rentals during the interim etween the receipt of

clear, apparently Cox owed the Bank at the time this letter was written a considerable amount for monies advanced on this project. The Bank agreed to these controls and continued to finance Cox. On July 11, 1956 and again on August 23, 1956 St. Paul authorized Tennefos to pay over to the Bank, funds which Tennefos had received from the State for work done by Cox.

St. Paul also made payments in excess of $20,000 for labor, materials and equipment rental so that Cox could comply with the terms and conditions of the joint venture agreement.

After Cox had completed its part of the work under the joint venture agreement there remained unpaid and outstanding $108,492.92 in bank loans that had been obtained and used by Cox in carrying out the project. This amount apparently all had been incurred prior to St. Paul's letter of April 3, 1956 to the Bank, though there is considerable doubt on this point. The Bank commenced an action in the South Dakota state court against Tennefos and Cox as principals, on the bond furnished to the State, and United Pacific as surety, seeking to recover the amount of the unpaid bank loans. Defense of this action was tendered to St. Paul but it was declined. Tennefos recognized its obligation as an indemnitor of United Pacific and assumed the defense of this state action. Tennefos raised the issue of coverage, much the same as St. Paul, but judgment was entered against Cox and Tennefos and United Pacific for $108,492.42

plus costs. Tennefos then tendered the appeal to St. Paul but this also was declined. The judgment was affirmed by the Supreme Court of South Dakota in State for Use of Farmers State Bank v. Ed Cox and Son, 132 N.W.2d 282 (S.D. 1965). Tennefos paid the judgment and then commenced this action against St. Paul to recover the amount paid, together with costs incurred in defending and appealing the state action.

The District Court heard the case without a jury and granted judgment for Tennefos in the amount of $147,591.-92 based on an estoppel theory. The trial court's ultimate determination was:

> "After having induced the Bank to continue financing Cox and prevailing upon Tennefos to transmit progress payments to the Bank to apply on the loans, in the view of this Court St. Paul Fire is estopped from denying that the loans were outside the coverage afforded under the terms of its indemnity bond."

We think the trial court reached a correct result but that an estoppel would not apply to the bank funds advanced before St. Paul became involved with the bank advances and in authorizing the Bank's advances, as indicated by its letter of April 3, 1956. It is impossible for us to tell on the record or by a reading of the state case what funds were advanced before April 3, 1956 and what funds were advanced after that date; or whether the original $108,000 comprising the basis of the Bank's state court suit represented ad-

---

periodic progress payments from the State.

"Should you undertake to finance Ed Cox & Son's continued operations on this project until final completion thereof, under arrangements whereby you exercise control over advances made by you so that such advances are used only to cover payrolls, supplies and material bills, and equipment rentals incurred in connection with this job, we shall have no objection to your being reimbursed for such advances out of the monthly progress payments.

"However, inasmuch as labor and material suppliers have an equitable lien on

the proceeds of the contract we must ask that you agree that no part of Ed Cox & Son's present indebtedness to you will be paid out of progress payments hereafter received until the job is finally completed, and all labor and material bills incurred on it have been paid. So far as that present indebtedness is concerned you will look only to any excess funds remaining after all labor and material bills are paid on this job, and to any other asset of Ed Cox and Son.

"\*       \*       \*       \*       \*       \*

"Signed
"St. Paul-Mercury Indemnity Co."

vances made by the Bank prior to April 3, 1956, or after April 3, 1956 or both.[5] To the extent that the judgment includes funds advanced by the Bank after St. Paul authorized the bank advancements by its letter of April 3, 1956, we think an estoppel theory would be applicable but that an estoppel could not be applied prior to the time that St. Paul by its acts authorized and induced the Bank to make the advances. The evidence would indicate this approximate date would be April 3, 1956, though there might have been some oral preliminary authorization shortly prior to that date. We, however, feel that this matter is not crucial, as "A successful party in the District Court may sustain its judgment on any ground that finds support in the record." Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957); Crossett Lumber Co. v. United States, 87 F.2d 930, 109 A.L.R. 1348 (8 Cir. 1937), and we think the contract bond as written covers Tennefos's loss.[6]

St. Paul contends that its contract bond only covers Cox's obligations under the joint venture agreement; that the agreement specifies in detail the obligations which Cox agreed to assume and that these obligations have been fully met; that the payment of money borrowed by its principal Cox is not within the contemplation of the joint venture agreement nor the bond; and further that no estoppel is warranted under the facts of this case. At the outset it should be noted that the case of United States for the Use of First Continental National Bank & Trust Co., Lincoln, Neb. v. Western Contracting Corporation, 341 F.2d 383, 387 (8 Cir. 1965) holding:

> "'It is the generally accepted view that one who loans or advances money to another for the purpose of meeting a payroll and paying for supplies cannot sue a surety who has guaranteed payment to those furnishing labor and material.'"

and other cases similarly holding that loans or advances of money to a contractor to pay for labor or material are not protected by a performance bond are not in point in this case, as the performance bond required by the South Dakota Highway Commission covered, in addition to the usual labor and material claims, all other just claims and was, as properly held by the South Dakota Supreme Court, much broader in coverage than the usual type of performance bond.

Cox and Tennefos began their joint venture by making a successful bid for the road construction project. They proceeded to execute the feasible and necessary documents to carry out the construction project. The instruments which they deemed feasible and necessary to accomplish their purpose were:

1. The joint venture agreement between themselves outlining the sphere of work to be performed by each and defin-

---

5. The record indicates that the Bank made further advances to Cox after the letter of April 3, 1956 and that the Bank was reimbursed for those advances by Tennefos upon instruction to do so by St. Paul.

   Plaintiff's exhibit No. 10 is a letter dated August 23, 1956 in which St. Paul authorizes payment of $42,721.39 to the Bank for the account of Cox for " * * * current estimate for work done." Also in a telegram of apparent date of July 11, 1956, St. Paul authorizes Tennefos to release to the Bank all proceeds Tennefos was then holding arising out of the first estimate of work performed on the project.

   The State trial court also made factual findings, (VI), indicating that after crediting all payments to the Bank made both prior and subsequent to March 1956, there remained owing to the Bank sums in excess of some $149,000.

6. The District Court judgment may, therefore, be affirmed by this Court on a legal theory different than the theory announced by the District Court if we think the judgment was correct based on the record before us. Barunica v. United Hatters, Cap and Millinery Workers, Local Number 55, 321 F.2d 764, 765–766 (8 Cir. 1963); State Mutual Life Assur. Co. of Worchester, Mass. v. Fleischer, 186 F.2d 358, 364 (8 Cir. 1951).

ing in detail Cox's obligation to Tennefos;

2. An indemnity agreement executed by Cox as principal and St. Paul as surety running to Tennefos as obligee;

3. The contract between the State Highway Commission and the joint venturers covering the road construction project;

4. The performance bond required by the State contract and executed by the joint venturers as principals and United Pacific as surety.

These various agreements and the recitals contained in them refer to a single transaction and were necessarily an integral part of the construction project.

■ The joint venture agreement refers to the bond, which Cox agreed to furnish Tennefos as "similar in form to the contract bond required by the South Dakota Highway Commission" of Tennefos and Cox. The joint venture agreement also outlines the scope of work to be performed by each of the joint venturers and states their individual responsibility for their share of the work, on which they were jointly obligated to perform for the State. The law presumes that a surety knows the contents of its principal's contracts. Hartford Accident & Indemnity Company v. United States, 127 F.Supp. 565, 567, 130 Ct. Cl. 490 (1955); United States v. Tyler, 220 F.Supp. 386 (Iowa 1963).

■ A contract of indemnity, which is issued by a compensated surety "* * * is to be regarded as in the nature of an insurance contract governed by the rules applicable to insurance contracts * * *". Massachusetts Bonding & Insurance Co. v. Feutz, 182 F.2d 752 (8 Cir. 1950). The bond issued by a compensated surety is related to and must be read and interpreted in connection with the other documents which make up the whole transaction:

"* * * where a bond and another contract or instrument relate to and form one and the same transaction, or the bond refers to such other instrument or is conditioned for the per-

formance of specific agreements set forth therein, such instrument with all its stipulations, limitations or restrictions becomes a part of the bond, and the two should be read together and construed as a whole." 9 Appleman, Insurance Law and Practice 70, § 5276.

We recognized and applied this principle in Home Indemnity Company v. F. H. Donovan Painting Co., 325 F.2d 870, 874 (8 Cir. 1963);

"It is a fundamental rule of construction that where the contract which is the subject of the performance bond is referred to in the latter, that the contract is to be regarded as a part of the undertaking of the surety under the bond." (Citations omitted).

■■ The joint venture agreement, which is admittedly covered by St. Paul's contract bond, specifically refers to and is related to the contract with the State Highway Commission. Absent the contract with the State Highway Commission there would be no need for the joint venture agreement or St. Paul's bond. These agreements should be read together as they represent successive steps which were taken to accomplish a single purpose. The courts have long recognized that a contract may consist of more than one instrument.

"A contract may be contained in several instruments. These if made at the same time, in relation to the same subject-matter, may be read together as one instrument, and the recitals in one may be explained or limited by reference to the other. This rule obtains even when the parties are not the same, if the several contracts were known to all the parties and were delivered at the same time to accomplish an agreed purpose." Peterson v. Miller Rubber Co. of New York, 24 F.2d 59, 62 (8 Cir. 1928)—cited with approval in 182 F.2d 752 (8 Cir. 1950).

And in Kurz v. United States, 156 F. Supp. 99, 104 (N.Y.1957), aff'd 254 F.2d 811 (2 Cir. 1958), the Court recognized

the principle: "* * * [W]here several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together, even though they do not expressly refer to each other." (Citations omitted). Further recognition of this principle is noted and discussed in Doherty Research Co. v. Vickers Petroleum Co., 80 F.2d 809 (10 Cir. 1936); Williston on Contracts, 3d Ed., § 628. 17A C. J.S. Contracts § 298, p. 128, expresses this construction rule, thusly:

"* * * as a general rule, * * * where several instruments of writings are made as part of one transaction, they will be read, or construed, together, and each will be construed with reference to the other. This is true even though the instruments involved do not in terms refer to one another;"

Similar comments on the problem of construction and interpretation of a contract consisting of more than one document is found in 3 Corbin on Contracts, pp. 188–192, § 549:

"In many cases * * * the terms of agreement may be expressed in two or more separate documents, * * * In every such case, these documents should be interpreted together, each one assisting in determining the meaning intended to be expressed by the others.

"This is true whether the documents are all executed by a single party or by two or more parties, and whether some of the documents are executed by parties who have no part in executing the others. A transaction may be tri-partite or even more complex, a factor that must not be disregarded in the process of interpretation of any of the documents.

"Internal references to one document to another are often helpful in the processes of interpretation and adjudication; but the absence of such a reference does not make a document unusable in these processes or inadmissible in evidence. Its connection and relevancy can be established otherwise."

The condition of St. Paul's indemnity bond is for payment of all loss sustained by Tennefos. It was issued by St. Paul to protect Tennefos against any failure of Cox in fulfilling its obligations under the joint venture agreement, which necessarily covers Cox's performance in carrying out its share of the South Dakota Highway contract.

The performance bond issued by United Pacific covering the construction project of the joint venturers was much broader than the usual performance bond, which ordinarily covers only claims for labor and material. This bond specifically covered "all just claims for materials, supplies * * * labor, and all other just claims incurred by him or any of his subcontractors in carrying out the provisions of this contract." And was specifically held by the South Dakota Supreme Court in State for Use of Farmers State Bank v. Ed Cox and Son, supra, to include bank loans advanced on this particular project; and expressly held at 287 of 132 N.W.2d:

"* * * the obligation assumed under the bond is determined by construing it together with the contract, and when so viewed it is extremely broad. Also emphasized is the principle that the bond should be construed most strongly in favor of indemnity."

St. Paul expresses surprise at the holding of the State Supreme Court in the *Ed Cox and Son* case but an examination of an earlier South Dakota case, J. F. Anderson Lumber Co. v. National Surety Co., 49 S.D. 235, 207 N.W. 53 (1926) would show a similar holding on an identical provision of "and all other just claims." The Court in *Anderson* reasoned at 57:

"The appellant surety voluntarily undertook an obligation so broad in its terms that it would be difficult to define the extremities of its scope as applied to various possibilities. No case

has been cited to us by counsel for either party to this appeal, where the obligation of the surety is shown to be as broad. [And the obligation of appellant's surety] * * * includes, not only 'labor' and 'material,' but 'supplies,' tools, appliances, * * * and all other just claims incurred by him * * * in carrying out the provisions of the contract."

By virtue of the joint venture agreement, Cox as principal and St. Paul as surety were obligated to furnish a bond similar in form to the bond required by the South Dakota Highway Commission and furnished by United Pacific. Similar in form would clearly indicate that at least as broad a coverage must be furnished by Cox and St. Paul as was required by the State and furnished by United Pacific. In other words, the construction contract and the performance bond given in connection therewith were a joint undertaking of Cox and Tennefos and in the contemplation of the parties any bond furnished pursuant to the joint venture agreement must afford protection to the obligee equal to the obligation of Cox and Tennefos to the State of South Dakota. This is a diversity case wherein the law of South Dakota applies and that State's interpretation of its law is binding on all of the parties. The contract bond furnished by St. Paul by its terms is clearly capable of being interpreted as covering the loss in question. St. Paul was obligated to furnish a bond as broad as that furnished by United Pacific and under which the loss in question was established as an ultimate liability against Tennefos. St. Paul should now not be heard to say that its bond afforded less coverage than it was obligated to afford under the joint venture agreement.[7]

In summary, we think the four instruments must be read together as they form the basis for a single transaction. In construing these instruments we think the coverage of the St. Paul bond must be at least equally as broad as Cox and Tennefos furnished the State. The St. Paul bond would also cover Tennefos's loss sustained by reason of Cox's failure to pay "all just claims." The money loaned to Cox by the Bank was determined to be a just claim by the South Dakota Supreme Court in State for Use of Farmers State Bank v. Ed Cox and Son, supra. This judgment was paid to the Bank by Tennefos thus causing him a loss which is directly attributable to Cox's failure to perform its obligation under the joint venture agreement. Since St. Paul's bond agrees to indemnify Tennefos against all loss sustained by Cox's failure to comply with the terms of the joint venture agreement, the loss suffered by Tennefos and occasioned by Cox clearly comes within the terms of St. Paul's bond.

Judgment affirmed.

---

7. That agreement in part reads:
"11. Furnish a satisfactory contract bond in the penal sum of $199,334.25 payable to the second party (Tennefos) as obligee *similar in form to the contract* *bond required by the* South Dakota State Highway Commission from the parties hereto, and pay the premium therefor." (Emphasis supplied).