[No. 1082-3.    Division Three.    August 8, 1975.]

ORAN O. TURNER, ET AL, *Appellants*, V. FRED H. WEXLER, ET AL, *Respondents*.

GREEN, J., dissents by separate opinion.

*J. D. McMannis*, for appellants.

*Charles O. Shoemaker, Jr.,* and *Aitken, Schauble & Shoemaker,* for respondents.

McInturff, C.J.—Oran and Mary Turner (Turners) appeal from a summary judgment dismissing their action to enforce the terms of a contract. We affirm.

On July 27, 1965, Turners entered into a conditional sales agreement (1965 contract) with Fred, Peggy and Kenneth Wexler (Wexlers). Under the terms of the contract Turners agreed to sell certain real property to the Wexlers. The contract provided for the release of the individual deeds to each lot upon payment of the installments with interest and with the condition precedent that street sewers and other improvements be completed.

Under the 1965 contract, if the Wexlers failed to make any of the payments or perform any of the covenants, the Turners could elect to sue for damages or forfeit the Wexlers out of the contract. The 1965 contract also provided that if any action was brought to enforce the terms of the contract or to forfeit it or to repossess the property, the prevailing party would be paid reasonable attorney's fees.

By 1969 several problems had arisen over the respective obligations of the parties under the 1965 contract. In the interim Arthur and Eloise Helbling (Helblings) had commenced construction of an apartment house on three of the lots that were to be deeded to the Wexlers under the 1965 contract. The Helblings needed financing to complete the apartment house. However, lending institutions were unwilling to loan them money unless they obtained title to the lots upon which the apartment house was located. This created a problem since the deeds could not be released from escrow because the Wexlers had not satisfied the condition precedent for release.

In an attempt to solve their respective problems, the Turners, Wexlers[1] and Helblings entered into a contract

---

[1] It appears that in the interim Kenneth L. Wexler married and his wife Jean Ann is a signatory to the 1969 contract.

(1969 contract) prepared by Turners' attorney, Mr. Moorer. It provided, among other things, for the immediate conveyance of the three lots to the Helblings for $20,000, payable to the Turners. Additionally, the Wexlers and the Helblings agreed to "bind themselves by a performance bond . . . in the amount of $30,000 to put in the streets, sewers, storm sewers, and water . . ." A performance bond, prepared by United Pacific Insurance Company (United Pacific) and signed by the Wexlers and Helblings as principals, was obtained on August 26, 1969, in accordance with the terms of the 1969 contract. The bond provided that the principals were "jointly and severally" liable to the Turners in the amount of $30,000.

The Wexlers defaulted on the 1965 contract and the Turners issued a notice of default.[2] The Wexlers failed to remedy the default and vacated the property. Pursuant to the 1965 contract, the monies paid by the Wexlers were forfeited as liquidated damages.

The Turners made demand upon United Pacific and the Helblings to comply with the 1969 contract. When they refused the present suit was commenced naming the Wexlers, the Helblings and United Pacific as defendants. The Helblings answered, alleging by way of an affirmative defense that since the Turners elected a forfeiture of the Wexlers' payments under the 1965 contract as modified by the 1969 contract, they were precluded from suing for damages. The defendants moved for summary judgment. The trial court granted the motion and awarded the defendants $3,650 as reasonable attorney's fees pursuant to a provision of the 1965 contract.

The trial court held: (1) the purpose of the 1969 contract was to settle questions that had arisen in the 1965 contract and to add the Helblings to the 1965 contract; (2) the unambiguous terms of the 1969 contract disclosed an intent that the 1969 contract modified the 1965 contract and that

---

[2] Other parties possessing recorded interests in the tract were named in the notice, however, the Helblings were not.

only one contract thereafter existed—the 1965 contract as modified; (3) the relationship of the Helblings to the Wexlers under the modified contract was either that of a joint obligor, joint and several obligor, or surety/guarantor; (4) the Wexlers' interest in the 1965/1969 contract was forfeited; (5) forfeiture is equivalent to performance; (6) the Turners were entitled to only one performance; and (7) the defendants were entitled to a dismissal of the action as a matter of law.

The thrust of Turner's contention is that the trial court's categorization of the Helbling-Wexler relationship is contrary to the testimony of the Turners' attorney that it was his intention by the 1969 contract to bind the Helblings independently of the Wexlers.

The primary purpose of judicial interpretation of contracts is to give effect to the parties' intentions and, to the extent possible, where parts of the same writing are inconsistent they should be construed so as to harmonize with one another.[3] Contract terms and their legal effect are to be determined as a whole.[4] Instruments which are part of the same transaction, relate to the same subject matter and are executed at the same time should be read and construed together as one contract, even though they do not refer to one another,[5] or even though they are not executed between the same parties.[6]

The 1969 contract and the performance bond may be treated as one contract because they were executed at approximately the same time as part of one transaction. Additionally, the 1969 contract does refer to a performance bond.[7] Although not executed at the same time, the 1969

---

[3] *Grant County Constructors v. E.V. Lane Corp.*, 77 Wn.2d 110, 120, 459 P.2d 947 (1969).

[4] 3 A. Corbin, *Contracts* § 547, at 183 (1960).

[5] *Levinson v. Linderman*, 51 Wn.2d 855, 859, 322 P.2d 863 (1958).

[6] *American Pipe & Constr. Co. v. Harbor Constr. Co.*, 51 Wn.2d 258, 265, 317 P.2d 521 (1957); 3A. Corbin, *Contracts* § 549, at 189-90 (1960).

[7] *St. Paul Fire & Marine Ins. Co. v. Tennefos Constr. Co.*, 396 F.2d 623, 628 (8th Cir. 1968); 4 S. Williston, *Law of Contracts* § 628, at 901 (3d W. Jaeger ed. 1961); Restatement of Contracts § 235(c) (1932); *see Lynch v. Higley*, 8 Wn. App. 903, 911, 510 P.2d 663 (1973).

contract and the performance bond may be construed as one contract with the 1965 contract. The 1969 contract, although not part of the 1965 transaction, arose out of that contractual relationship. The 1969 contract provided that the original agreement was to remain in "full force and effect except as modified herein." The 1969 contract could not stand alone as a separate contractual agreement without reference to the terms of the original agreement. Turners argue that whether a contract is entire or severable depends on the intent of the parties and this creates a question of fact, citing *Saletic v. Stammes*, 51 Wn.2d 696, 699, 321 P.2d 547 (1958). This argument is without merit. Whether the three agreements constitute one contract or more is a question of interpretation or law for the court and does not create a factual issue.[8]

Having determined that the contracts must be construed together as a whole, we must decide whether there is any ambiguity regarding the parties' contentions as expressed in the contract. If there is any ambiguity present and contradictory evidence is introduced to clarify the ambiguity, a question of fact would be created which may not be resolved by a summary judgment.[9]

■ The 1969 contract provided:

> That on this date [*Wexlers*] and [Helblings] will bind themselves by a performance bond . . . to put in the street, . . .

(Italics ours.) On the other hand, the performance bond provided that the Wexlers and Helblings were "jointly and severally" liable to put in the streets, etc. Thus on the face of these two documents an inconsistency arises as to the nature of the obligation of the parties, *i.e.*, whether the

---

[8]*American Pipe & Constr. Co. v. Harbor Constr. Co.*, 51 Wn.2d 258, 265, 317 P.2d 521 (1957); *Levinson v. Linderman*, 51 Wn.2d 855, 859, 322 P.2d 863 (1958); *King v. Second Ave. Inv. Co.*, 117 Wash. 41, 46, 200 P. 572 (1921); *Lawrence v. Tandy & Allen, Inc.*, 14 N.J. 1, 100 A.2d 891, 894 (1953); *Piccari v. Vardaro*, 195 Pa. Super. 557, 171 A.2d 807, 809 (1961).

[9]*Nashem v. Jacobson*, 6 Wn. App. 363, 367, 492 P.2d 1043 (1972).

parties intended the obligation to be joint or joint and several. However this alternate possibility is immaterial. The agreement clearly expresses the intention of the parties to be either joint or joint and severally liable. Nothing in the 1969 agreement separately or when read in light of the performance bond expressly or implicitly alludes to the imposition of sole liability on the Helblings. To adopt the Turners' position would be to use parol evidence to vary, contradict or alter the terms of the 1969 agreement which cannot be done.[10]

In *Suess v. Heale*, 68 Wn.2d 962, 416 P.2d 458 (1966), the court stated that a forfeiture executes a contractual agreement as effectively as performance of a contract itself. As observed in 4 A. Corbin, *Contracts* § 928, at 716-17 (1951):

> There being but a single performance due from all the promisors, [whether they be joint or joint and several] the rendition of that full performance, or of its full agreed equivalent, by anyone, operates as a discharge of all;[11]

Since forfeiture by Turners of Wexlers' interest in the property is the equivalent of performance by Wexlers of their obligations under the total agreement (1965 contract, 1969 contract and performance bond), Helblings, regardless of what their relationship was to the Wexlers, were discharged from that duty. It follows that the discharge of the principals on the performance bond discharged United Pacific as its liability is no greater than that of the principal.[12]

The final issue is whether the court erred in awarding attorney's fees to the defendant. The 1965 and 1969 contracts and the performance bond should be construed together as a whole. Where a writing refers to a

---

[10]*Nashem v. Jacobson*, 6 Wn. App. 363, 367, 492 P.2d 1043 (1972); 3 A. Corbin, *Contracts* § 94, at 572 (1960).

[11]*See Pacific Southwest Trust & Sav. Bank v. Mayer*, 138 Wash. 85, 89, 244 P. 248 (1926); cf. 2 S. Williston, *Law of Contracts* § 316, at 541 (1959); Restatement of Contracts § 11, comment *a* at 130 (1932).

[12]*State ex rel. Reitmeier v. Oakley*, 129 Wash. 553, 562, 225 P. 425 (1924).

separate agreement, an agreement or so much of it as referred to should be considered as part of the writing.[13] The 1969 contract provided that the 1965 contract was to remain in "full force and effect except as modified herein." The reference to the 1965 contract acted to incorporate its provisions into the 1969 contract and made its terms binding upon all parties. The 1965 contract provided that the prevailing party would be awarded reasonable attorney's fees if any action was brought to "enforce any of the terms of this agreement or to forfeit same." A covenant in a land purchase contract to pay attorney's fees is not rendered ineffective by an election to forfeit the purchaser.[14] The attorney's fees awarded defendants were based upon substantial evidence.

Judgment of the superior court is affirmed.

MUNSON, J., concurs.

GREEN, J. (dissenting)—I am unable to agree with the majority's basic premise that the 1965 Turner-Wexler agreement and the 1969 Turner-Wexler-Helbling agreement constituted one contract insofar as the Helblings are concerned. *Helblings did not sign the 1965 contract.* The 1969 agreement signed by the Helblings does not incorporate by reference or make binding the 1965 agreement upon Helblings. It simply provides:

13. That the original agreement of July 27, 1965, for the sale of the real estate by the Party of the First Part [Turners] to the Party of the Second Part [Wexlers] remains in full force and effect except as *modified herein.*

(Italics mine.) Modifications contained in the 1969 agreement relate primarily to clarification of differences between Turners and Wexlers arising from the earlier agreement. Helblings' only obligation under the 1969 agreement per-

---

[13] 4 S. Williston, *Law of Contracts* § 628, at 901; *accord, Lynch v. Higley*, 8 Wn. App. 903, 911, 510 P.2d 663 (1973); *Gray v. Cotton*, 166 Cal. 130, 134 P. 1145, 1147 (1933); *cf.* Restatement of Contracts § 235(c) (1932).

[14] *Suess v. Heale, supra.*

tains to the installation of streets and sewers. They are not obligated to make any of the payments required of Wexlers under the 1965 agreement, nor to perform any of the other covenants contained in that agreement aside from those concerning streets and sewers. Consequently, as to Helblings the two agreements cannot be treated as one. Whether they can be treated as one agreement as to Wexlers involves a question of fact.

Moreover, I am constrained to disagree with the majority conclusion that forfeiture of the 1965 agreement constitutes performance of the 1969 agreement releasing the Wexlers, Helblings and United Pacific from the obligations created by the 1969 agreement. The forfeiture returned to the Turners all of the property sold under the 1965 agreement, except the three lots deeded to the Helblings pursuant to the 1969 agreement. As to the three lots, the 1965 agreement was not performed in the sense used by the majority, i.e., not all of the property covered by the 1965 agreement was returned to the Turners. Neither was the 1969 agreement performed by the forfeiture because the consideration for the deed of the three lots to the Helblings included a promise to install streets and sewers. The Turners' obligations under this agreement were executed upon delivery of the deeds to the Helblings, and in my view this action properly lies to recoup damages for Wexlers' and Helblings' failure to perform their reciprocal obligation under this agreement. Construing the record in a light most favorable to the nonmoving party, at the very least, an issue exists upon which evidence should be taken to determine whether the parties intended the 1969 agreement to be subject to the forfeiture provisions of the 1965 agreement. This is in keeping with the

> principle of universal application that forfeitures are abhorred in the law and will not be declared except in the clearest and most positive cases, or where the contract [the 1969 agreement] broken so provides in express terms. A forfeiture will be avoided if possible.

*State ex rel. Tacoma v. Sunset Tel. & Tel. Co.*, 86 Wash. 309, 324, 150 P. 427 (1915).

Finally, I believe the majority errs in affirming the trial court's award of attorney's fees as to the Helblings and United Pacific, based upon the provisions in the 1965 agreement. Since they are not parties to that agreement, they cannot recover attorney's fees from Turners based upon a provision of that agreement.

I would reverse and remand for trial.

Petition for rehearing denied September 4, 1975.

Review denied by Supreme Court November 12, 1975.