[No. 34188. Department Two. November 7, 1957.]

AMERICAN PIPE AND CONSTRUCTION COMPANY, *Respondent,* v. HARBOR CONSTRUCTION COMPANY et al., *Appellants,* THE CITY OF ANACORTES, *Respondent.*[1]

[1]Reported in 317 P. (2d) 521.

*Lenihan & Ivers*, for appellants.

*Wells & Wells* (*Stott & Gooding*, of counsel), for respondent American Pipe and Construction Company.

*W. V. Wells* and *Alfred McBee*, for respondent city of Anacortes.

ROSELLINI, J.—On January 17, 1955, the city of Anacortes advertised for bids for the purchase of pipe and other supplies for the city's proposed new water supply system. According to the specifications, delivery was to begin on March 7th and to be completed by May 7th, and bidders were also advised that delivery was of utmost importance because, under a contract between the city and Shell Oil Company, the city was obliged to deliver water to the latter's new refinery, which was scheduled to open on June 1, 1955. American Pipe and Construction Company, hereafter referred to as the pipe supplier, was the successful bidder and was awarded the contract on or about the first of February. The contract provided that the pipe was to be delivered in sequence to trench side, so that it could be installed in sequence, and provided a penalty to be paid to the city for delays in delivery, due to the fault of the supplier, beyond the time fixed for delivery on the bid sheet or the time which might subsequently be agreed upon.

On February 15th, bids for the installation of the pipe were invited. Harbor Construction Company, hereafter

referred to as the installation contractor, was the successful bidder and was awarded the contract on or about the first of March, 1955. The pipe supplier's guaranteed delivery date appeared on the specifications for this bid, and the installation contractor was required to complete the installation job in ninety-five days. Among the provisions of this contract was the following:

*"Article 47. Claims for Damages and Extensions of Time.* The Contractor shall not be entitled to any claim for damages on account of hindrances or delays and he shall not be charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond his control and without his fault or negligence, including, but not restricted to, acts of God, or of the public enemy, acts of the Owner, acts of another contractor in the performance of a contract with the Owner, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of Subcontractors due to such causes, provided that the Contractor shall give notice in writing of the causes of any such act, hindrance or delay within ten (10) days after its occurrence."

This contract also contained a provision for liquidated damages for delay in completion of the work. It further provided that the installation contractor must acquaint himself with any other contracts awarded by the owner and perform his contract in the light of such contracts. It was further provided:

"Standard lengths of pipe will be delivered to the job as manufactured. The Contractor shall acquaint himself with the manufacturer's shipping schedule and so arrange his pipe laying operations. . . .
"In no case shall the Owner be liable for any claims made by the Contractor for failure of the Owner's manufacturer to deliver as scheduled or promised."

Prior to submitting its bid, the installation contractor obtained and accepted a bid from the pipe supplier for certain "specials" which were not to be furnished by the city.

Although the installation was scheduled to begin on March 7th, pipe was not on hand at that time, and the installation contractor did not move his equipment onto

the job site until March 14th, when pipe was available. The work was completed on or about June 2, 1955. No penalties for delays were assessed. This was due to the fact that the construction of the Shell refinery had not proceeded as rapidly as had been expected, and pressure on the city and its subcontractors was relaxed.

The project was accepted by the city in December, 1955, after other installations not covered by these contracts were completed, and within thirty days thereafter the pipe supplier filed a claim with the city for $9,700.91 which it alleged the installation contractor owed on its contract with the pipe supplier. The city held a sum in excess of that amount, which was due the installation contractor, which it withheld pending settlement of the dispute between the installation contractor and the pipe supplier.

On April 30, 1956, the pipe supplier filed this suit, naming the city, the installation contractor and the surety on the latter's bond as defendants. The surety answered that the city had in its possession funds sufficient to pay the claim and asked to be dismissed from the action, and the city tendered the amount of $11,700.91, which it had withheld from the installation contractor, into the registry of the court. The installation contractor denied that any sum was due the pipe supplier, claiming that certain items had not been delivered or were defective and cross-complaining for expenses on account of delays in delivery of pipe under its contract with the city. Liability of the city for these delays was also alleged.

The trial court found that the installation contractor had been put to expense because of the pipe supplier's failure to deliver certain items according to specifications, and that on one occasion the installation contractor had requested and had received assurance that certain pipe would be delivered at specified times; that the pipe had not been delivered as promised; and that the installation contractor was entitled to an offset for the expense which this delay involved. The remaining offsets were denied. Judgment was entered for the pipe supplier in the sum of $7,574.93

with interest, attorney's fees and costs. Recovery against the city on the cross-complaint was also denied.

The questions on appeal are whether the installation contractor is entitled to recover from the city for delays incurred by the former by reason of the failure of the latter to deliver the pipe which it agreed to furnish on or before the original "guaranteed delivery date," and whether the pipe supplier is liable for these delays.

The answer to the first of these questions is that the city, in its contract, disclaimed all liability for delays occasioned by its own act or acts of other contractors in the performance of their contracts with the city. Where a contract expressly precludes the recovery of damages for delays caused by such defaults, that provision will be given effect. *Ericksen v. Edmonds School Dist.*, 13 Wn. (2d) 398, 125 P. (2d) 275, and cases cited therein. See, also, Annotations, 10 A. L. R. (2d) 801.

In regard to the second question, the trial court did not find it necessary to decide whether the pipe supplier's contract with the city was enforcible by the installation contractor but based its decision upon findings that the pipe was delivered at a steady rate, as contemplated by the contract, and that any loss sustained by the installation contractor was due to its failure to inform itself of the pipe supplier's shipping schedule and arrange its work accordingly.

The installation contractor points out that these findings overlook the fact that the delivery of the pipe was not completed by May 7, 1955, the guaranteed delivery date, and the further fact that it was not shown that by familiarizing itself with the pipe supplier's delivery schedule, it could have secured delivery of all of the pipe by that date. Both of these objections have validity, and it becomes necessary, therefore, to examine the contractual relations between the parties.

Although it is plain that no privity of contract existed between the installation contractor and the pipe supplier with regard to the pipe which the supplier contracted with the city to deliver, the installation contractor seeks to

establish such privity by invoking the rule that contracts which form parts of the same transaction should be read and construed together. In support of its position, it cites *Paine-Gallucci, Inc. v. Anderson*, 41 Wn. (2d) 46, 246 P. (2d) 1095. In that case, the appellant had contracted with the city to install a water pipeline in a new subdivision which he owned. The respondent in turn proposed to do this work for the appellant, with the exception of replacing street surfacing referred to as "oil mat." A written contract was drawn up by the appellant's attorney, which omitted this provision but made no mention of such repairs. There was a provision for the replacement of any broken-up concrete or asphalt, which would result from the crossing of paved streets. The contract between the appellant and the city also provided for replacement of oil mat. The court held that reformation of the written contract between the appellant and the respondent was not necessary in order to establish the true contract between the parties. Construing the contract between the appellant and the city, and the contract between the respondent and the appellant together, as part of the same transaction, it found that the provision for replacing oil mat was included in the undertaking of the appellant but not included in the undertaking of the subcontractor, respondent, and therefore, the obligation to do this repair work was upon the appellant. The court said:

"In such a situation, the court may be asked to reform the contract so as to include the omitted provision, or, if it appears to the court that the entire agreement of the parties was made up of more than one written document, that such documents were made as parts of the same transaction, related to the same subject matter and were not inconsistent with each other, all of them may be considered together, and from them a determination made as to all of the terms of the agreement and the intention of the parties. Rules with reference to the latter approach are discussed in *Speirs v. Jahnsen*, 143 Wash. 297, 255 Pac. 117; *Standring v. Mooney*, 14 Wn. (2d) 220, 127 P. (2d) 401; *Vance v. Ingram*, 16 Wn. (2d) 399, 133 P. (2d) 938, and 12 Am. Jur. 781, Contracts, § 246."

While this case holds that a contract between A and B may be considered in determining the meaning of a contract between A and C, it does not go so far as to say that by construing the two contracts together, a contract can be found to exist between B and C. The third-party contract in this case was used solely as an aid in construing the contract between the parties to the suit. The case does not hold that, because the two contracts were pertinent to the transaction, they thereby became a three-way contract, with each of the parties liable to the other two.

The authorities cited in *Paine-Gallucci, Inc. v. Anderson, supra,* and other authorities cited by the appellant also support the rule that, where several instruments are executed as a part of the same transaction, they should be construed together to arrive at the obligations between the parties to these instruments. However, none of them, with one possible exception, supports the theory that, by construing the contracts together, a contract can be established between any two of the parties who are not parties to the same instrument.

The only authority presented by the appellant for his proposition that, by construing instruments together, one may be rendered liable to a party with whom he did not contract is *Hagerman v. Schulte,* 349 Ill. 11, 181 N. E. 677. That case involved a joint adventure, orally agreed upon, between three parties, whereby one was to construct an apartment building upon land owned by another, and the third was to manage it, and each was to share in the profits. Their agreement was later reduced to two writings, one signed by the owner and the contractor, the other by the owner and the manager. All three were present and participated in this transaction. While the court stated that the instruments constituted one contract, equally binding on all as if signed by all, its decision, ordering an accounting, was based upon the fiduciary relation arising out of the joint adventure which had been orally agreed upon.

The only authority given by the court for its conclusion that the two written contracts were binding on the parties

who did not execute them was the rule relating to construction of contracts which was stated in that case as follows:

"Where two or more contracts are part of the same transaction and relate to the same subject matter, are known to all the parties and are delivered at the same time to accomplish an agreed purpose, such contracts must be construed together as parts of the same transaction; and this is so even though the contracts are not executed between the same parties. *Union Bank and Trust Co. v. Himmelbauer*, 57 Mont. 438, [188 Pac. 940]; 2 Williston on Contracts, § 628."

■ The rule is one of *interpretation* only and we do not think that it can be extended to create a contract where none was intended.

■ At any rate, a number of the circumstances that must be present before the rule is applicable, do not appear in this case. Although the contract between the city and the pipe supplier, and the contract between the city and the installation contractor, relate to the same subject matter, under the evidence, they were not made at the same time and place and the terms of each were not known to all of the parties. When the city contracted with the pipe supplier, bids for installation had not been invited, and the officers of the installation contractor testified that when their bid for installation was submitted, they had not seen the contract with the pipe supplier.

Furthermore, the installation contractor is not relying upon the contract between the city and the pipe supplier as an aid to the interpretation of its contract with the city, but is relying upon one of the provisions of that contract as a promise made for the benefit of the installation contractor. In short, the true nature of the installation contractor's contention is that it is entitled to damages for breach of the "guaranteed delivery date" provision as a third-party beneficiary.

Because the city undertook to furnish the pipe in question, the installation contractor takes the position that it was a creditor beneficiary of the contract between the pipe supplier and the city—its theory being that the pipe supplier agreed to discharge a duty which the city owed to the

installation contractor. The first flaw in this theory is that the city, in its contract with the installation contractor, expressly disclaimed any duty to furnish the pipe without delays. If the guaranteed delivery date in the city's contract with the pipe supplier was intended to benefit the installation contractor, it was a gratuitous provision.

But conceding that the performance of the pipe supplier's contract would benefit the installation contractor by enabling it to complete its contract within the time limit imposed by the city, whether it be regarded as a creditor or a donee beneficiary, we do not think the contract can be construed to confer upon the installation contractor the right to enforce its provisions.

In *Priestley v. Peterson*, 19 Wn. (2d) 820, 145 P. (2d) 253, we said, quoting from *Grand Lodge etc. v. United States Fidelity & Guaranty Co.*, 2 Wn. (2d) 561, 98 P. (2d) 971:

" 'The question whether a contract is made for the benefit of a third person is one of construction. The intention of the parties in this respect is determined by the terms of the contract as a whole construed in the light of the circumstances under which it was made.' "

In regard to the requisite intent, in *Vikingstad v. Baggott*, 46 Wn. (2d) 494, 282 P. (2d) 824, we recognized the rule stated in 81 A. L. R. 1271, 1287, that such "intent" is not a desire or purpose to confer a benefit upon the third person, nor a desire to advance his interests, but an intent that the promisor shall assume a direct obligation to him.

It is recited in the instant contract that the city is under an obligation to complete the installation of its new water system before the Shell refinery is ready to be put into operation and that time is, therefore, of the essence. If through its own fault the pipe supplier does not complete delivery before the date agreed upon, it is subject to a penalty to be paid to the city, and which the city may waive. The city reserves the right to make changes in the specifications, and the delivery date may be changed. (The city did, in fact, change its order for pipe both as to quantity and

type of construction and granted an extension of time for delivery.) Nowhere in this contract does the pipe supplier assume any obligation to the installation contractor, although its performance of the contract will inure to the benefit of that contractor and all other contractors involved in the operation. If the installation contractor were allowed to enforce the contract as originally made, the city would be precluded from making the changes which it was contemplated would become necessary as the work progressed and which, in fact, were made. The right to make these changes and to grant extensions of time, was expressly reserved.

We cannot find, in the terms of this contract, an assumption of an obligation on the part of the pipe supplier to the installation contractor, and consequently, it cannot be held answerable to the latter for its failure to perform its contract with the city as originally made.

Having failed to exact from the city, with which it contracted, a guarantee that pipe would be furnished without delay, the installation contractor's sole remedy was the extension of time, which was granted.

The judgment is affirmed.

HILL, C. J., DONWORTH, FINLEY, and FOSTER, JJ., concur.

---

January 30, 1958. Petition for rehearing denied.