**Wayne JETT, Plaintiff–Appellant,**

v.

**Jeffrey S. SUNDERMAN; Sunrise Enterprise Corporation; National Union Fire Insurance Company of Pittsburgh; and Union Planters Bank, Defendants–Appellees.**

**No. 86–6525.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1987.

Decided March 3, 1988.

Brian Ray Hodge, Jett, Clifford & La-
quer, Los Angeles, Cal., for plaintiff-appel-
lant.

Robert C. Rosen, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., for defendants-appellees National Union Fire Ins. Co.

Thomas Larry Watts, Wildman, Harrold, Allen, Dixon, Barash & Hill, Los Angeles, Cal., for defendants-appellees Union Planters Nat. Bank.

Before CHAMBERS, WALLACE and POOLE, Circuit Judges.

## OPINION

POOLE, Circuit Judge:

Wayne Jett appeals the district court's grant of summary judgment in favor of defendants-appellees Union Planters Bank ("Union Bank") and National Union Fire Insurance Company ("National Union") in an action alleging state and federal securities law violations, RICO violations, common law fraud and conversion, all arising from Jett's investment in a limited partnership which went into bankruptcy. We affirm in part and reverse in part.

## FACTS AND PROCEEDINGS BELOW

In December 1983, Jett purchased an interest in a limited partnership ("Partnership") by making a cash down-payment of $11,000 and executing an interest bearing promissory note ("Note") for $90,000 payable to the limited partnership in five annual installments. The offering memorandum stated that the Partnership intended to use the investors' notes as security for a loan, and that National Union had orally committed to issue a surety bond as additional collateral to secure payment of the loan. Issuance of the bond was conditioned upon the limited partners executing an indemnification and pledge agreement in favor of National Union. Accordingly, Jett executed the required agreement ("Indem-

nification Agreement") at the time he made the investment. Union Bank subsequently issued a loan to the Partnership, and National Union issued a bond under which it guaranteed payment to Union Bank upon default on any of the notes issued by the limited partners ("Bond").

Jett made the first installment payment on the Note in March 1984. He later learned that the limited partnership had gone into bankruptcy, and he refused to make the second installment payment. He informed Union Bank that he believed the Note was unenforceable and demanded that Union Bank cease making demands on National Union for payment. In June 1985, National Union informed Jett that it had paid $28,329.32 on his behalf to Union Bank and demanded indemnification.

The following month Jett filed a complaint in district court against the Partnership, the general partners, Union Bank and National Union, alleging liability for fraud and conversion, and for violation of various state and federal securities laws and RICO. The gravaman of Jett's complaint against Union Bank and National Union concerned a waiver which was included in the Bond issued by National Union.[1] Jett and the appellees dispute the meaning of the waiver. Jett contends that it had the effect of waiving his defenses to the promissory note, including possible defenses based on violations of federal securities laws. He also claims he had no knowledge of the waiver until June 1985, shortly before National Union demanded indemnification. Union Bank and National Union maintain that the waiver applied only to defenses which might be asserted by National Union against execution of the bond, and not to the investors' defenses to their notes.

In December 1985, the district court granted Union Bank's motion for summary judgment. The district court made oral findings that Union Bank: 1) was not a seller under the Securities Act; 2) was not

---

1. The waiver stated: "Defenses available to the Surety or any Principal against the Obligee or Permitted Assignee to deny payment of the Notes or of a claim under this Bond due to acts or omissions of the Obligee or Permitted Assign-

ee, or other entity or person shall not be valid against the Permitted Assignee. Such defenses include but shall not be limited to ... the unenforceability of any Note."

an aider and abettor; 3) was not shown to have knowledge of the alleged wrongdoing; 4) was not a control person; 5) had no duty to disclose; and 6) had no relationship of trust or confidence with Jett. After granting Jett leave to amend his complaint, the district court granted National Union's motion for summary judgment. The court found that National Union was not a seller for purposes of § 12(2) of the Securities Act, was not an aider or abettor, was not a control person, and that its failure to disclose the existence of the waiver was not actionable under Rule 10b–5 because it did not occur "in connection with" the sale of securities. The district court did not decide whether National Union had a duty to disclose the waiver to the investors, because the other findings made this determination unnecessary. Nor did the district court reach a conclusion about the meaning of the waiver agreement.[2]

On appeal Jett challenges the district court's grant of summary judgment to the defendants-appellees and its refusal to allow additional discovery.

## STANDARD OF REVIEW

■ We review the district court's grant of summary judgment *de novo*.[3] Summary judgment is appropriate if, viewing the evidence in the light most favorable to Jett, there were no genuine issues of material fact and the defendants-appellees were entitled to judgment as a matter of law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986). We review the district court's rulings concerning discovery for an abuse of discretion. *Hatch v. Reliance Ins. Co.*,

758 F.2d 409, 416 (9th Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985).

## DISCUSSION

### I. FRAUD IN THE OFFER OR SALE OF SECURITIES IN VIOLATION OF § 12(2) OF THE SECURITIES ACT.

■ Section 12(2) of the Securities Act of 1933 provides that a person who offers or sells securities by means of a prospectus or oral communication containing material misrepresentations or omissions shall be liable to the purchaser in an action for rescission or damages. 15 U.S.C. § 77*l* (2). Under the doctrine of participant liability, a person may be liable as a "seller" even if he was not the one who passed title. *S.E. C. v. Murphy*, 626 F.2d 633, 649–50 (9th Cir.1980). But the participant is liable as a seller only if his actions were both necessary to and a "substantial factor" in bringing about the sales transaction. *Id.* "The test is whether the injury to the plaintiff flowed directly and proximately from the actions of the defendant." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1294 (9th Cir. 1982). Acts which we have considered pertinent to the participant liability determination include: (1) devising the issuer's corporate financing scheme, (2) preparing or reviewing offering memoranda, (3) meeting personally with broker-dealers or investors, and (4) participating in promotional seminars or sales meetings. *Murphy*, 626 F.2d at 652. *See also S.E.C. v. Rogers*, 790 F.2d 1450, 1457 (9th Cir.1986); *Anderson v. Aurotek*, 774 F.2d 927 (9th Cir.1985) (per cu-

---

**2.** In his brief Jett has mistakenly asserted that this issue was decided by the district court. It appears that he misunderstood statements the judge made in the course of analyzing a different issue. The judge merely assumed *arguendo* that Jett's interpretation of the contract was correct; he did not decide the issue. On appeal we also have assumed *arguendo* that Jett's defenses to the Note were waived; however, that issue remains open on remand.

**3.** The record shows that the district court treated Union Bank's and National Union's alternative motions for summary judgment or dismissal as motions for summary judgment pursuant to F.R.C.P. 56. The oral findings made at the

December 2, 1985 hearing on Union Bank's motion and the written findings in the subsequent ruling on National Union's motion show that the district court considered evidence presented by the parties. In addition, the reporter's transcript shows that at the hearing on May 5, 1986, the parties agreed to have National Union's motion treated as one for summary judgment. Although an order dated December 2, 1985, states that Union Bank's "motion to dismiss" was granted, the court subsequently stated in the order granting National Union's motion that it had previously granted "summary judgment" for Union Bank.

riam); *Seaboard Corp.*, 677 F.2d at 1293–95.

Union Bank submitted declarations of three of its officers and managers demonstrating the bank's lack of involvement in the offer and sale of the Partnership interests. The declarations stated that Union Bank: (1) had no communications with Jett or the other investors prior to closing the loan to the Partnership,[4] (2) did not participate in preparing the offering materials and did nothing to promote the investment, and (3) followed routine banking practices in evaluating and approving the loan, requiring loan documentation which was standard for that type of transaction.

National Union submitted the declarations of one of its claim managers and one of Union Bank's officers in support of its motion for summary judgment. The claims manager stated that National Union: (1) did not participate in preparation of the offering materials, (2) did not communicate with any of the investors prior to their investing in the Partnership, and (3) had no involvement in the transaction except for guaranteeing the investors' notes.

Jett submitted only two declarations prior to the ruling on Union Bank's motion—his own and his attorney's. By the time the district court ruled on National Union's motion, Jett had submitted two additional declarations—another of his own and one from a certified financial planner. None of these declarations controverted the statements summarized above concerning Union Bank's and National Union's lack of involvement in the sale of interests in the limited partnership. Jett offered no other evidence to show that the defendants-appellees were a "substantial factor" in bringing about the transaction. Consequently, we find that Jett failed to raise any genuine issues of fact concerning the appellees' liability as participants. Summary judgment on the § 12(2) claim is affirmed as to both appellees.

---

**4.** There was one exception. Union Bank representatives had conversations with one investor who was acting as National Union's agent in negotiating the Bond. The declaration stated

## II. FRAUD IN CONNECTION WITH THE SALE OF SECURITIES IN VIOLATION OF § 10(b) OF THE EXCHANGE ACT.

Rule 10b–5, promulgated under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful for any person:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1987).

Jett argues that Union Bank and National Union violated Rule 10b–5 in three different ways. First, he argues that both appellees violated the rule by failing to disclose the existence of the waiver agreement. Second, he contends that execution of the waiver agreement was itself a fraudulent scheme or deceptive practice prohibited by Rule 10b–5, independent of the failure to disclose. Third, he argues that the appellees affirmatively misrepresented material facts by agreeing to a Bond which did more than guarantee the investors' credit, which the offering materials stated was the purpose of the Bond.

### A. UNION BANK

We first address the claims against Union Bank. In ruling on Union Bank's motion for summary judgment, the district court found that the bank was not liable under Rule 10b–5 because it had no duty to disclose the waiver to Jett. Rule 10b–5 is violated by nondisclosure only when there is a duty to disclose. *Chiarel-*

---

that those conversations related solely to the Bond and the agent was not acting in his capacity as an investor.

*la v. United States,* 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980). We have held that a number of factors are properly considered in determining a defendant's duty to disclose under Rule 10b–5. Among those factors are: (1) the relationship of the parties, (2) relative access to information, (3) the benefit that the defendant derives from the relationship, (4) the defendant's awareness that the plaintiff was relying upon the relationship in making his investment decision, and (5) the defendant's activity in initiating the transaction. *White v. Abrams,* 495 F.2d 724, 735–36 (9th Cir.1974). The Supreme Court has held that the parties to an impersonal market transaction owe no duty of disclosure to one another absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has placed trust and confidence in the other. *Chiarella,* 445 U.S. at 232, 100 S.Ct. at 1116–17. The reasoning is equally appropriate in this situation. If Jett and Union Bank had no prior dealings or pre-existing relationship and the circumstances of the transaction were not such as to create a relationship of trust and confidence, then the threshold requirement of a duty to disclose has not been met.

Union Bank submitted declarations indicating that it had no relationship with the investors prior to their making the investment. The declarations stated that the bank had no communications with the investors and did not initiate the transaction or participate in it in any way that would induce the investors to rely on the bank to disclose information about the Bond. Jett did not refute Union Bank's declaration. Nor did he allege that he had contractual relations with Union Bank, as he had with National Union by virtue of the Indemnification Agreement. Jett's argument that Union Bank owed him a duty to disclose the terms of the Bond is based on no more than the fact that Union Bank was aware of the terms of the Bond, while he was not, and that the bank benefited by receiving a commitment fee and interest on the loan. Jett offered no evidence of any relationship or prior dealings from which the duty to disclose might arise. Consequently, he

failed to raise genuine issues of fact concerning Union Bank's duty to disclose, and the district court was correct in concluding that there was no duty.

■ The district court's reasoning with respect to Jett's second and third arguments in support of a § 10(b) violation is less clear. The lack of clarity does not preclude review, however, since we may uphold correct conclusions of law even though they were reached for the wrong reason or for no reason, and we may affirm a decision on any basis supported by the record. *United States v. Washington,* 641 F.2d 1368, 1371 (9th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982).

■ Jett failed to come forward with facts showing that Union Bank's acceptance of the Bond amounted to a fraudulent scheme or deceptive practice. The declarations submitted by Union Bank indicated that the loan documentation requirements were routine. In opposition, Jett submitted his lawyer's declaration, which was prepared after reviewing documents from Union Bank's loan files. That declaration stated only that Union Bank had financial summaries and copies of the offering materials prior to making the loan, and that it had received credit proposals for other limited partnerships established by the same limited partner. Jett's own declaration submitted prior to judgment on Union Bank's motion made no mention of the bank's involvement in the affair, except for reference to correspondence which was exchanged after Jett failed to make the 1985 installment payment on the Note. Neither declaration showed that Union Bank's participation amounted to anything other than a routine commercial financing transaction. There was no other evidence before the district court when it ruled on Union Bank's motion.

■ Jett's third argument, based on affirmative misrepresentation, fails because Union Bank provided uncontroverted evidence that it was not involved in preparing or distributing the offering materials. Consequently, no affirmative representa-

tions contained in those materials can be attributed to Union Bank. The fact that the bank accepted a Bond which allegedly was not accurately described in the offering materials does not make it responsible for representations which it did not make.

Jett raised no genuine issues of material fact to overcome Union Bank's motion for summary judgment, and the district court correctly concluded that the bank was entitled to judgment as a matter of law.

## B. NATIONAL UNION

The district court did not decide whether National Union had a duty to disclose the waiver to the investors, basing its ruling instead on the conclusion that National Union's nondisclosure did not occur "in connection with" the sale of securities. Liability attaches under Rule 10b–5 only if the proscribed acts or omissions are made "in connection with" the purchase or sale of a security. *In re Financial Corp. of America Shareholder Litigation*, 796 F.2d 1126, 1128 (9th Cir.1986) *("In re FCA")*. The district court found that the alleged omission had nothing to do with the security itself or with the risks associated with it. Since the nondisclosure's only connection with the purchase was as part of the financing, the district court concluded that it did not come within the purview of Rule 10b–5.

■ That an omission relates to financing rather than some other aspect of the investment does not necessarily determine whether it is made "in connection with" the purchase of the security. In *Arrington v. Merrill Lynch, Pierce, Fenner & Smith*, 651 F.2d 615 (9th Cir.1981), we held that a broker's misrepresentations about the risks involved in purchasing securities through a margin account were made "in connection with" the sale of securities. We rejected the broker's argument that the representations related only to the financing of the purchase of securities and not to the purchase itself. The broker had also falsely represented that the brokerage firm was recommending the stocks which he urged his clients to buy on margin. The combined misrepresentations, including those

relating to use of margin, constituted a scheme to induce the client to borrow money from the broker and engage in commission-producing securities purchases. *Id.* at 619.

On the other hand, in *In re FCA* we held that an auditor's advice concerning accounting treatment of certain securities which were subsequently purchased by the plaintiff was not given "in connection with" the purchase of the securities. The accounting advice had nothing to do with the intrinsic nature of the securities, or with the risks related to their method of purchase. Nor was it causally linked to the investor's purchase or to its ultimate loss. Consequently, there was no § 10(b) violation. 796 F.2d at 1130.

■ Under the criteria developed in these cases, we find that there were genuine issues of fact concerning whether National Union's failure to disclose the existence of the waiver occurred "in connection with" Jett's purchase of the Partnership interests. In his declarations Jett stated that an indemnification agreement was required of all investors and that he would not have invested in the securities had he known of the waiver. He also stated that his decision was influenced by his understanding that in the event of misrepresentation or fraud in inducing the investment, his only loss would be the forfeiture of his interests in the Partnership, and that he would not have invested had he known of the language in the Bond. Jett also submitted the declaration of a financial planner which stated that the bond arrangement used here was not common and that disclosure of the waiver would have had a negative effect on sale of the securities.

■ These offerings raised factual issues about whether there was a financing/sale situation similar to that in *Arrington*, whether the waiver and nondisclosure increased the risks associated with the method of purchasing the Partnership interests, and whether the nondisclosure was causally related to Jett's decision to make the investment. Summary judgment might nonetheless be appropriate if Jett failed to

raise genuine issues of fact with respect to the existence of other elements of a Rule 10b–5 violation, such as the duty to disclose or the materiality of the nondisclosure. Resolution of these issues is likely to turn on essentially the same facts as those which determine whether the nondisclosure occurred "in connection with" the sale. Their resolution may also depend on whether the waiver had the effect alleged by Jett. We believe these were issues properly to be resolved by the district court in the first instance. Accordingly, we remand to the district court for reconsideration of Jett's § 10(b) claim against National Union.[5]

### III. "AIDER AND ABETTOR" AND "CONTROL PERSON" LIABILITY

Jett argues that even if Union Bank and National Union are not primarily liable for any federal securities law violations, they are secondarily liable for Sunderman's violations as either "aiders and abettors" or "control persons."

■ The elements of a cause of action for "aider and abettor" liability under federal securities laws are: "(1) the existence of an independent primary wrong; (2) actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong." *Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). Union Bank and National Union both submitted declarations to the effect that neither had knowledge of or participated in any wrongdoing on the part of the Partnership or the general partners. The declarations submitted by Jett fail to raise any genuine issue as to these facts; therefore, the district court did not err in finding appellees were not "aiders and abettors."

■ A defendant may be liable as a "control person" when he controls those who are primarily liable for securities law violations. We have held that "control person" liability attaches only if the defendant had actual power or influence over the allegedly controlled person and was a "culpable participant in the alleged illegal activity." *Orloff v. Allman*, 819 F.2d 904, 906 (9th Cir.1987); *Buhler v. Audio Leasing Corp.*, 807 F.2d 833, 835 (9th Cir.1987). The declarations of Union Bank and National Union stated that they did not exercise control over the Partnership or the general partners. The declarations also denied knowledge of and participation in any wrongdoing carried out by the Partnership or the general partners. Again, because Jett provided no evidence to controvert these statements, he failed to create a genuine issue of facts necessary to find the appellees secondarily liable.

### IV. RICO AND STATE LAW CLAIMS

■ The district court granted summary judgment to the defendants on the RICO claims because it found that there were no federal securities law violations, and therefore no predicate acts. It dismissed the state law claims because, having granted summary judgment on the federal claims, it could decline to exercise pendent jurisdiction. Summary judgment on these claims was proper as to Union Bank, but reconsideration of that ruling as to National Union is required since summary judgment was inappropriate on the Rule 10b–5 claim.

### V. DISTRICT COURT'S ABUSE OF DISCRETION IN GRANTING SUMMARY JUDGMENT PRIOR TO ALLOWING DISCOVERY.

■ Jett argues that the district court abused its discretion by granting summary judgment without allowing him additional discovery. The record does not show that

5. The district court indicated that it would have reached the same result by treating National Union's motion as one for dismissal for failure to plead fraud with sufficient particularity as required by Fed.R.Civ.P. 9(b). It reasoned that the only specific factual allegations in the complaint concerned the Indemnification Agreement and waiver of defenses in the Bond, which was not enough to satisfy the "in connection with" requirement of Section 10(b). Viewed in light of the correct criteria for the "in connection with" requirement, Jett's amended complaint was sufficient and should not be dismissed.

Jett objected to Union Bank's motion on the grounds that he needed additional discovery, but he did request additional discovery pursuant to Fed.R.Civ.Proc. 56(f) in his opposition to National Union's motion. In support of that request Jett submitted evidence that the relationship between Sunderman and National Union was established prior to the offering and that they had other similar arrangements. He sought discovery concerning the nature and extent of National Union's involvement.

The district court found that additional discovery was unwarranted, given the nature of the allegations in Jett's complaint and the scope of the requested discovery. . Apparently this ruling rested on the erroneous conclusion that since the Bond and Indemnification Agreement related only to financing, National Union's involvement necessarily was not "in connection with" the sale of the partnership interests. A district court abuses its discretion when it rests its conclusions on incorrect legal standards. *S.E.C. v. Carter Hawley Hale Stores, Inc.*, 760 F.2d 945, 947–48 (9th Cir.1985). Jett was entitled to conduct discovery concerning National Union's involvement in the financing/sale arrangements.

The district court's judgment in favor of Union Bank is *affirmed*. The judgment in favor of National Union on the § 12(2) claim is *affirmed*. The judgment on Jett's other claims against National Union is *reversed* and the case is *remanded* for further proceedings.