GENERAL INSURANCE COMPANY
OF AMERICA, a Washington
corporation, Plaintiff,

v.

FORT LAUDERDALE PARTNERSHIP,
a general partnership;  et al.

No. 89–26Z.

United States District Court,
W.D. Washington, N.D.

May 21, 1990.

Robert Farnum Bakemeier, Bogle & Gates, Seattle, Wash., Alan B. Rubenstein, Rackman, Sawyer & Brewster, Boston, Mass., for defendant Domenick Nicolaci.

Ramer B. Holtan, Jr., Perkins, Coie, Seattle, Wash., Donald H. Shaw, Shaw & Markistin, New York City, for defendant Harry Walker.

## ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO DISMISS

ZILLY, District Judge.

THIS MATTER comes before the Court upon plaintiff's motion for summary judgment and defendant's motion to dismiss for lack of personal jurisdiction. This Court took both motions under advisement following oral argument on May 4, 1990. The Court now being fully advised hereby GRANTS plaintiff's motion for summary judgment (docket no. 33) and DENIES defendant's motion to dismiss (docket no. 45).

Plaintiff General Insurance Company of America ("General") issued a $1,893,500 bond in favor of Banque Indosuez. The bank extended financing to Cypress Corners South ("Cypress Corners"), a New York limited partnership with commercial real estate holdings in Florida. Defendants Domenick Nicolaci and Harry Walker were limited partners in Cypress Corners. They purchased their interests with little cash down by executing relatively large promissory notes in favor of the partnership.

The financing from Banque Indosuez was secured by the partnership's assignment to the bank of the limited partners' promissory notes, including those executed by Nicolaci and Walker. The bond issued by General guaranteed the limited partners' obligations under the notes. General moves for summary judgment in the amount of $122,787.35 against defendant Nicolaci and $130,367.76 against defendant Walker. The figures represent sums paid by General to Banque Indosuez following the defendants' defaults on their promissory notes, and General's attorney fees and costs in prosecuting this claim.

B. David Thomas, Windus, Thomas, Calmes & Wiley, Bellevue, Wash., for plaintiff.

As consideration for issuing the bond, General required both Nicolaci and Walker execute an "Indemnification and Pledge Agreement." *See* Oswald Decl., Exhs. D & E. Those agreements obligate each partner to indemnify General for any amounts paid on the bond by reason of the partner's default on the underlying note. *See id.* at ¶ 3, p. 2. Each partner is further obligated to pay interest thereon at the highest legal rate, as well as any costs or expenses, including reasonable attorney fees, incurred by General.

Defendants Nicolaci and Walker do not deny that they signed the promissory notes and indemnity agreements, that they failed to make payments on the notes, and that General made the payments they missed. Other than in one minor aspect, *see infra* section B.6. (attorney fees), neither defendant directly challenges the sufficiency of General's summary judgment motion. Rather, they individually interpose numerous defenses to liability. To defeat summary judgment, therefore, each defendant must at least raise a genuine issue of fact as to each material element of their defenses.

## A. *Domenick Nicolaci*

Defendant Nicolaci moves to dismiss this action for lack of personal jurisdiction. He also resists the instant summary judgment motion on grounds that the indemnity agreement is unenforceable because it was part of a package of contracts which were procured by fraud, and that his signature on the indemnity agreement was fraudulently obtained by a third person who was acting as an agent of General.

### 1. Personal Jurisdiction [1]

■ Nicolaci is a resident of Massachusetts. General Insurance is a Washington corporation. Cypress Corners is a New York limited partnership which owned and operated an office building in Fort Lauderdale, Florida. Nicolaci denies having minimum contacts with the state of Washington. General does not dispute Nicolaci's denial, but argues instead that Nicolaci consented to this Court's jurisdiction under terms of the Indemnification and Pledge Agreement. *See* Oswald Decl., Exh. D, at ¶ 9, p. 4.[2] Nicolaci denies being bound by the forum selection clause on grounds that he never assented thereto or that his assent was fraudulently obtained.

In *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the U.S. Supreme Court ruled forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. at 1913, 32 L.Ed.2d at 520. The Court imposed a high standard of proof for the party resisting the jurisdictional claim: The forum selection clause should control "absent a *strong* showing" that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching. *Id.* at 15, 92 S.Ct. at 1916, 32 L.Ed.2d at 523 (emphasis supplied).

The factual allegations here are relatively straightforward. Defendant Nicolaci claims he was unaware of the forum selection clause at the time he executed the Indemnification and Pledge Agreement.

---

1. Nicolaci argued, and lost, a virtually identical motion in *General Insurance Co. v. Nicolaci,* No. C88–1047C (W.D.Wash.1988). *See* Minute Order, dated Nov. 22, 1988. That case was an action by General for indemnification against Nicolaci relating to another limited partnership, Quail Oaks Associates. While this Court is of the opinion that Nicolaci is collaterally estopped from relitigating the issue of jurisdiction, *see, e.g., Malland v. Department of Retirement Systems,* 103 Wn.2d 484, 489–90, 694 P.2d 16 (1985), an examination of the merits of his claim demonstrates that he cannot prevail as well.

2. "Investor hereby agrees that the Application for Surety and this Agreement shall be deemed to have been executed in the State of Washington, and the rights and liabilities of the parties hereto shall be determined in accordance with the laws of the State of Washington. Any action or proceeding of any kind against Investor arising out of or by reason of this Agreement may be brought in any State or Federal court of competent jurisdiction in the State of Washington, ... in addition to any other court in which such action might be brought, and Investor hereby submits to the jurisdiction of any such court."

*See* Nicolaci Aff., at ¶ 12, p. 5. Indeed, as part of a broader allegation of fraud, Nicolaci alleges that his financial adviser, Richard Abedon, fraudulently induced him to invest in Cypress Corners by misrepresenting the risk involved and the amount of income the investment was expected to generate. *See id.* at ¶ 10, pp. 4–5. He further alleges that Abedon induced him to sign the necessary investment documents, including the indemnity agreement, without disclosing their contents and after assuring him that he had thoroughly examined each and had already approved of them. *See id.* at ¶ 11, p. 5.

The jurisdiction in this action is founded upon diversity of citizenship. This Court is therefore required to apply Washington law on the threshold question of whether the forum selection clause is valid and enforceable. *See, e.g., Colonial Leasing Co. v. Pugh Bros. Garage,* 735 F.2d 380, 382 (9th Cir.1984) (applying Oregon contract law). The Washington rule concerning a party's failure to read a contract term is summarized in *National Bank v. Equity Investors,* 81 Wash.2d 886, 506 P.2d 20 (1973):

> [A] party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or was ignorant of its contents. One cannot, in the absence of fraud, deceit or coercion be heard to repudiate his own signature voluntarily and knowingly fixed to an instrument whose contents he was in law bound to understand.

*National Bank,* 81 Wash.2d at 912–13, 506 P.2d 20 (citations omitted). The Washington Supreme Court in *Skagit State Bank v. Rasmussen,* 109 Wash.2d 377, 745 P.2d 37 (1987), elaborated on *National Bank,* holding the relevant inquiry includes whether: (1) the party had an opportunity to examine the documents; (2) the documents were plain and unambiguous; (3) the party was sufficiently sophisticated and experienced to understand the documents he signed; and (4) the party was the victim of fraud, deceit or coercion. *Skagit State Bank,* 109 Wash.2d at 382–84, 745 P.2d 37.

The first three factors are clearly satisfied under the facts presented. First, Nicolaci does not allege he was denied an opportunity to examine the indemnity agreement. Rather, he alleges he declined to do so in reliance upon his "trust and confidence in Abedon." Nicolaci Aff., at ¶ 12, p. 5. Second, the five-page indemnification agreement is plain and unambiguous, *see* Oswald Decl., Exh. D, and Nicolaci does not contend otherwise. Third, Nicolaci was not an unsophisticated businessman. Indeed, at the time he entered into the Cypress Corners investment he was the chairman and part-owner of Cliftex Corp., a company with projected annual sales of $120,000,000. *See* Paterson Decl., Exh. A (Dun & Bradsheet Report).

The only remaining question, therefore, is whether the alleged fraud by Abedon vitiates Nicolaci's assent in signing the indemnity agreement with General. As an initial matter, there is no allegation here that Abedon misrepresented the terms of the indemnity agreement or the fact that it included a forum selection clause. *Cf. Farmland Industries, Inc. v. Frazier-Parrott Commodities, Inc.,* 806 F.2d 848, 851 (8th Cir.1986). More importantly, because Nicolaci's fraud defenses fail for the reasons described in sections A.2.–.3, *infra,* Nicolaci is bound by the parties' contractual selection of this forum.

Even if this Court were to conclude that Nicolaci's fraud allegations raise triable issues of fact, Nicolaci would still be subject to this Court's jurisdiction absent a "strong showing" that the parties' choice should be set aside. *The Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916, 32 L.Ed.2d at 523. The facts presented negate such a showing. In particular, the signature page of the indemnity agreement, which Nicolaci acknowledges signing, includes the final words of the Washington forum selection clause. *See* Oswald Decl., Exh. D, p. 5 ("... and Investor hereby submits to the jurisdiction of any such court."). This language should have at least put Nicolaci on notice that the document might obligate him to defend himself in a foreign forum. Under these circumstances, and in view of the defendant's undisputed business sophistication,

this Court concludes that Nicolaci has failed to make a sufficient showing to avoid enforcement of the forum selection clause. Accordingly, Nicolaci's motion to dismiss for lack of personal jurisdiction is denied.

### ·2. Fraudulently Procured "Package" of Contracts

■ Defendant Nicolaci next contends that the indemnification agreement was part of a "package" of contracts which were procured by fraud. On December 11, 1984, Nicolaci executed three key documents: (1) a $199,400 promissory note in favor of Cypress Corners, representing his purchase of an interest in the partnership; (2) the indemnity agreement with General; and (3) an estoppel letter submitted by General. *See* Oswald Decl., Exhs. A, D & F. Citing a recent Second Circuit decision, *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199 (2d Cir.1989), Nicolaci argues that Abedon's fraud in connection to the underlying investment is a complete defense to actions brought on any of the contracts. ¡Alternatively, Nicolaci argues the interrelatedness of the contracts raises a factual question which precludes summary judgment.

The *Turtur* court ruled that where several contracts are executed at the same time, even though the contracting parties are not the same, a defense to one contract based on fraudulent inducement may provide a defense to the other contracts, at least to the extent the parties intended that their agreements be dependent upon each other. The court further ruled that the parties' intent is generally a question of fact. *Id.* at 204–05; *see also In re Gas Reclamation, Inc. Securities Litigation*, 733 F.Supp. 713 (S.D.N.Y.1990).

■ The Second Circuit expressly based its decision on New York law. *Turtur*, 892 at 200 n. 2, 204–05. This Court is, of course, required to follow Washington law.[3] It is the rule of this state that no contractual relationship exists between two parties who independently contract with a

third, even though both contracts were part of the same transaction. *See American Pipe & Constr. Co. v. Harbor Constr. Co.*, 51 Wash.2d 258, 265, 317 P.2d 521 (1957). To the extent multiple contracts may properly be construed as a single agreement, Washington law is clear that the question is one of interpretation or law that must be decided by the Court. *Turner v. Wexler*, 14 Wash.App. 143, 147, 538 P.2d 877, *rev. denied*, 86 Wash.2d 1004 (1975).

Reviewing the evidence presented, this Court concludes as a matter of law that the three documents executed by Nicolaci do not constitute a single agreement. The various agreements served different purposes, as their terms make plain, and imposed discrete legal obligations. General and the partnership, though they both contracted with Nicolaci, were not themselves in privity. *American Pipe*, 51 Wash.2d at 265, 317 P.2d 521. Additionally, Nicolaci expressly waived in the indemnity agreement any defenses to his obligations thereunder based on the acts of third persons. *See* Oswald Decl., Exh. D, at ¶ 2, p. 2. The inclusion of such a clause clearly negates an inference that the parties' obligations were intended to be dependent upon each other. Similarly, the promissory note specifies that it is to be governed in accordance with New York law while the indemnity agreement provides for the application of Washington law. *Compare id.*, Exh. A, at p. 2 (Promissory Note), *with* Exh. D, at ¶ 9, pp. 4–5 (Indemnification and Pledge Agreement).

Nicolaci's argument rests solely upon an inference of intent arising from the fact that the investment and indemnification agreements were executed at. the same time. *Cf. Turtur*, 892 F.2d at 205 (uncontradicted evidence that investor executed agreements as part of one whole transaction, believing contract ultimately sued upon was necessary prerequisite to completing transaction). Such an inference lacks support in the facts presented: .Nicolaci specifically denies being aware of sign-

---

**3.** In his reply, defendant Nicolaci incorporates by reference codefendant Walker's argument that New York law should apply. That argu-

ment lacks merit for the reasons discussed below. *See infra* section B.2.

ing the indemnity agreement with General and even denies knowing of the surety. *See* Nicolaci Aff., at ¶¶ 8 & 13, pp. 3–4 & 5–6. There simply is no basis in the record for concluding that the parties intended Nicolaci's obligations under the indemnity agreement to be dependent upon his separate investment agreement with Cypress Corners. *Turner,* 14 Wash.App. at 147, 538 P.2d 877; *see also Abbott v. The Equity Group,* 1990 WL 3152, 1990 U.S.Dist. LEXIS 211 (E.D.La. Jan. 8, 1990), *amended,* 1990 WL 32979, 1990 U.S.Dist. LEXIS 3107 (March 20, 1990) (applying Louisiana law).

### 3. Fraud by Agent of General[4]

■ Defendant Nicolaci's final defense is that Richard Abedon was acting as an agent of General when he presented the indemnity agreement for Nicolaci's signature. Abedon was Nicolaci's financial advisor. He also had an ownership interest in one of the two general partners of Cypress Corners. *See* Paterson Decl., at ¶ 10, p. 4. Nicolaci had previously contracted with Abedon for "comprehensive financial services, including expert investment, tax, and financial planning advice." Thomas Decl., Exh. A & attached exhibit, at ¶ 26, p. 6. By that agreement, Abedon agreed to screen and analyze "carefully" every investment recommended to Nicolaci. *Id.* at ¶ 27, p. 6.

■ Nicolaci bears the burden of proving that Abedon was acting as General's agent. *See Lamb v. General Associates, Inc.,* 60 Wash.2d 623, 627, 374 P.2d 677 (1962). Under the law of agency, a principal is responsible for his agent's acts, but only if those acts were committed within the scope of the agent's authority. *Id.* at 633, 374 P.2d 677. Absent consent, a prerequisite of an agency is control of the agent by the principal. *See Skagit State Bank v. Rasmussen,* 109 Wash.2d 377, 388, 745 P.2d 37 (1987).

The record reflects that Cypress Corners was the third of four guaranty bonds issued by General to syndications involving Abedon. *See* Paterson Decl., at ¶ 10, p. 4. There is, however, no evidence that General authorized Abedon to act as its agent, or possessed or exercised control of him. Doug Paterson, General's officer in charge of the Cypress Corners guaranty bond, represents that he "never met, spoke with, or communicated with Richard Abedon" in connection with any of the four bonded syndications. *Id.* at ¶ 13, p. 6. Paterson also denies knowing of Abedon's relationship with Nicolaci. *Id.* There is therefore no factual basis for a finding of agency. *Skagit State Bank,* 109 Wash.2d at 388, 745 P.2d 37.

There is also no factual showing that Abedon misrepresented the nature or contents of the indemnity agreement when he presented it to Nicolaci. Similarly, no evidence has been presented which suggests that Abedon was acting within the scope of his authority when he made certain representations concerning the risks involved in the underlying investment. On this record, there is no basis to conclude that Abedon was General's agent. *See, e.g., National Union Fire Ins. Co. v. Dahl,* 1990 WL 48074, 1990 U.S.Dist. LEXIS 3855 (S.D. N.Y. April 9, 1990); *National Union Fire Ins. Co. v. DeLoach,* 708 F.Supp. 1371, 1379 (S.D.N.Y.1989); *Turtur,* 1988 WL 48695, 1988 CCH Fed.Sec.L.Rep. ¶ 93,765, 1988 U.S.Dist. LEXIS 4252 (S.D.N.Y.1988), *aff'd in part and rev'd in part,* 892 F.2d at 205 n. 5.

### B. *Harry Walker*

Defendant Harry Walker makes the same essential factual allegations as Nicolaci. In his case, however, the perpetrator of the alleged fraud was Curtis Hendrix, an associate of Abedon, who also was a financial advisor to Walker. Walker met Hendrix in 1980 or 1981. Walker and his son eventually entered into eleven limited part-

---

**4.** Nicolaci unsuccessfully argued this defense in *General Insurance Co. v. Nicolaci,* C88–1047C (W.D.Wash.1988). *See* Order Granting Plaintiff's Motion for Summary Judgment, dated June 5, 1989. Again, while this Court believes that Nicolaci is barred from relitigating this issue, a review of the merits of his argument also supports entry of summary judgment in the instant case.

nership deals with Hendrix worth almost one million dollars. Hendrix, like Abedon, possessed an ownership interest in one of the two general partners in Cypress Corners. Hendrix was also a "placement agent" for the transaction.

Walker repeats the legal arguments first raised by Nicolaci and makes several of his own. These new defenses include Walker's allegation that General violated its Washington duty to deal in good faith, was a party to Hendrix's fraud, and violated federal securities laws. Walker also complains there is a factual question concerning General's request for attorney fees.

### 1. Personal Jurisdiction

█ Walker is a resident of New York. He agreed to indemnify General as part of his investment in Cypress Corners. The indemnity agreement is identical to the one signed by Nicolaci, and contains a Washington forum selection clause. *See* Oswald Decl., Exh. E, at ¶ 9, pp. 4–5 (Indemnification and Pledge Agreement). All the investment documents were executed by Walker in New York.

Like Nicolaci, Walker alleges he was fraudulently induced by his financial advisor, Hendrix, to invest in Cypress Corners. *See* Shaw Decl.,[5] Exh. 1, at pp. 36–37 (Walker Depo.). The gravamen of Walker's allegation is that Hendrix represented that he had investigated the investment and concluded it would make money. *Id.* at p. 37. Hendrix is also alleged to have represented that the investment would be a good tax shelter. *Id.* According to their custom, Hendrix presented the indemnity agreement and other documents related to Cypress Corners for Walker's signature. *Id.* at pp. 37–38. Walker did not review the documents but signed where indicated by Hendrix. *Id.* at p. 40.

Walker was an experienced businessman. *See* Thomas Decl., Exh. D, at pp. 20–22 (Walker Depo.). He concedes that he did

take the opportunity to review the documentation relating to his investment in Cypress Corners. *Id.* at p. 39. As previously indicated, the indemnity contract is plain and unambiguous. With respect to the allegations of fraud, Walker's denial of jurisdiction is factually indistinguishable from that of Nicolaci, and fails for the reasons previously described. *See supra* section A.1.

### 2. Fraudulently Procured "Package" of Contracts

█ Walker also urges the Court to follow the Second Circuit's decision in *Turtur*. His argument is denied based on Washington law as applied to the facts of this case. *See supra* section A.2. Indeed, an even stronger case can be made here for concluding that the multiple agreements signed by Walker should not be construed as a single contract: Walker at least signed a security agreement with General which included a New York choice of forum clause. *See* Shaw Decl., Exh. 11, at ¶ 7, p. 5. By comparison, the indemnity agreement provides that disputes are to be litigated in Washington. This evidence further underscores this Court's conclusion that these agreements were intended to be separate and independent.

Alternatively, Walker contends that New York law should govern the question of construction. This argument lacks merit. The indemnity agreement provides that Washington law is to apply to disputes arising thereunder. *See* Oswald Decl., Exh. E, at ¶ 9, p. 4.[6] Walker attempts to avoid operation of that clause by arguing that under Washington rules of conflict New York law should apply. This argument was squarely rejected in *McGill v. Hill*, 31 Wash.App. 542, 644 P.2d 680 (1982). "In the absence of a contrary intent, a choice of law clause refers only to the local laws of the [chosen] state, not to

---

5. The Court struck the declaration by defense counsel Donald Shaw for the reasons stated at oral argument. The Court's ruling did not apply to the exhibits appended thereto.

6. "Investor hereby agrees that the Application for Surety and this Agreement shall be deemed to have been executed in the State of Washington, and the rights and liabilities of the parties hereto shall be determined in accordance with the laws of the State of Washington."

the conflict rules." *Id.* at 547–48, 644 P.2d 680 (citing Restatement (Second) of Conflict of Laws § 187(3) (1971)). Walker offers no evidence of such an intent, and this Court discerns none from the plain words of the agreement.

### 3. Violation of Washington Duty of Good Faith

Walker also attempts to avoid summary judgment by arguing that General breached its Washington duty of good faith by failing to disclose material facts within its knowledge. Walker asserts that General failed to disclose the involvement in the Cypress Corners syndication of a convicted felon, Alan Esrine, and failed to disclose its right to partial indemnification from the general partners.

■■■■■ There is no general requirement under Washington law of full disclosure of all relevant facts in every business relationship. A duty to disclose may arise, however, when the parties enjoy a fiduciary relationship, or when one party knows that the other party is acting under a mistake as to undisclosed material facts, and that the mistake if mutual would render voidable a transaction caused by relying thereon. *See Liebergesell v. Evans,* 93 Wash.2d 881, 893, 613 P.2d 1170 (1980) (quoting Restatement of Contracts § 472 (1932)).

■■ The first situation is inapplicable here because there is no allegation that General stood in a fiduciary relationship with Walker. With respect to the second situation, uncontroverted evidence has been received to the effect that General was unaware of Esrine's alleged criminal record at times relevant to this litigation. *See* Paterson Decl., at ¶ 14, p. 6; Shaw Decl., Exh. 2, at p. 132 (Paterson Depo.). A party resisting summary judgment "must offer more than conclusory allegations, and if the [moving party] presents affidavits or other evidence establishing a lack of scienter, the [resisting party] must come forward with some affirmative showing." *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 739 F.2d 1434, 1436 (9th Cir.

1984). Walker makes no such showing here.

■■ The second nondisclosure complained of concerns General's right to indemnification from the general partners of up to twenty percent of a limited partner's interest in the event of an unrecovered default. *See* Shaw Decl., Exh. 8, p. 4 (Limited Partnership Guaranty Bond General Partner Agreement). This right to partial indemnification was not disclosed in the private placement memorandum. Walker contends that the omission constitutes a breach of General's duty under Washington law to deal in good faith.

General did not prepare the Cypress Corners placement memorandum. The record reflects, however, that as a matter of practice General requests to review placement memoranda relating to syndications it bonds. *See* Paterson Decl., at ¶ 18, p. 8. With regard to Cypress Corners, General concedes that it requested changes be made in regard to items "that pertained to General or the indemnification agreement." *Id.* at ¶ 19, p. 8. The surety denies any involvement in the underlying investment. *Id.*

As an initial matter, there is no allegation that the nondisclosure was material. *See Liebergesell,* 93 Wash.2d at 893 n. 2, 613 P.2d 1170 (duty of disclosure applies to "material facts"). Even assuming the materiality of the nondisclosure, there is no claim here that Walker relied upon the allegedly deficient placement memorandum. *See id.* at 899, 613 P.2d 1170. In fact, the evidence supports the opposite conclusion. Walker repeatedly affirms he relied solely upon Hendrix in his investment decisions, and executed the necessary documentation without reviewing their contents. *See* Shaw Decl., Exh. 1, at pp. 38–40 (Walker Depo.). In fact, Walker never saw the private placement memorandum because of his reliance on Hendrix. *See id.* at p. 38. Under the record presented, this Court must conclude that Walker has failed to demonstrate at least a triable issue of fact as to each element of the defense he asserts.

#### 4. Fraud by General or its Agent

■ Walker next alleges that Hendrix was an agent or subagent of General when he obtained Walker's signature on the indemnity agreement. He makes essentially the same legal argument made by Nicolaci: General supplied either directly or indirectly the indemnity form to Hendrix who in turn presented the document with the other investment papers to Walker for signing. Walker did so without reading the documents in reliance upon Hendrix's representation that they were in order. *See* Shaw Decl., Exh. 1, at pp. 38 & 40 (Walker Depo.).

Walker concedes that he did not know of General and was unaware that he was contracting with it at the time he signed the indemnity agreement. *Id.* at pp. 39–40 & 55–56. He further concedes that Hendrix never told him he was an agent of General. *Id.* at p. 55. On the other hand, General represents that it had no contact or communication with Walker. *See* Paterson Decl., at ¶ 13, p. 6. Doug Paterson, who negotiated the Cypress Corners bond, acknowledges meeting Hendrix once or twice, but denies knowing that Hendrix was acting as Walker's financial advisor. *Id.* Here again, there is no evidence that General exercised control of Hendrix. *See Skagit State Bank*, 109 Wash.2d at 388, 745 P.2d 37. Walker's agency defense also suffers additional defects already described with regard to Nicolaci. *See supra* section A.3.

■ Walker also contends that there is a material question of fact whether General was itself a party to Hendrix's fraud. Walker concedes that he did not examine the placement memorandum. *Cf. Turtur*, 1988 CCH Fed.Sec.L.Rep. at 98,589, *aff'd in part and rev'd in part*, 892 F.2d 199 (investors had relied on misleading placement memorandum). His fraud allegation against General rests solely on his claim that General knew or should have known that Hendrix would not disclose certain investment information. This argument is untenable in light of the uncontroverted evidence that General was unaware that Hendrix was acting as Walker's financial advisor. *See* Paterson Decl., at ¶ 13, p. 6.

#### 5. Violations of Federal Securities Laws

The final affirmative defense raised by defendant Walker concerns his allegation that General violated federal securities laws. Walker alleges General violated Rule 10b–5 for certain omissions in the private placement memorandum. Walker appears to allege both primary and secondary liability against General.

■ For primary liability to attach, Walker must demonstrate that General was under a duty to disclose. *See Jett v. Sunderman*, 840 F.2d 1487, 1492 (9th Cir. 1988). In general, "the parties to an impersonal market transaction owe no duty of disclosure to one another absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has placed trust or confidence in the other." *Id.* at 1493. Walker fails to point this Court to any evidence demonstrating that the Cypress Corners transaction, as it involved Walker and General, was anything other than an impersonal market transaction. *See, e.g., Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1448 (S.D.Cal.1988).

Even accepting the existence of such a duty, the fact remains there is no allegation or evidence that Walker relied upon the placement memorandum, or that any omissions therein were the cause of the harm alleged. The exact opposite appears to have occurred. *See* Shaw Decl., Exh. 1, at pp. 38–40 (Walker Depo.).

■ In his related defense, Walker alleges General is liable for controlling those (presumably Hendrix and Abedon) who were primarily liable for securities violations. *See Jett*, 840 F.2d at 1495. "Control person" liability attaches only if the defendant had actual power or influence over the allegedly controlled person and was a "culpable participant in the alleged illegal activity." *Id.* (quoting *Orloff v. Allman*, 819 F.2d 904, 906 (9th Cir.1987)). There is no factual basis for such a claim here. *See supra* section B.4.

#### 6. Attorney Fees

Lastly, Walker contends that there is a factual issue concerning the amount of at-

torney fees sought by plaintiff. The indemnity agreement expressly authorizes the recovery of "reasonable attorneys' fees." *See* Oswald Decl., Exh. E, at ¶ 3, p. 3. With respect to Walker, General requests attorney fees in the amount of $26,-695.50, representing $12,407.00 for fees incurred through December 20, 1989, *see* Thomas (First) Aff., at ¶ 4, p. 2; $11,519.00 for fees incurred from December 21, 1989 through February 7, 1990, *see* Thomas (Second) Aff., at ¶ 4, p. 9; and $2,769.50 for fees incurred from February 8, 1990 through May 4, 1990, *see* Thomas (Third) Aff., at ¶ 4, p. 2.

Obviously, the defect alleged does not preclude entry of summary judgment on the question of liability. Moreover, the fee request is supported by affidavits of plaintiff's counsel, *see* Thomas Affs. (billing records attached), and the hourly rate (*i.e.*, $90 to $110 per hour) and the number of hours spent (*i.e.*, less than 290 hours) appear reasonable under the circumstances of this case. Accordingly, Walker's argument lacks merit.

### SUMMARY

In summary, defendants Nicolaci and Walker have failed to demonstrate genuine issues for trial. Defendant Nicolaci's motion to dismiss is DENIED. Summary judgment is GRANTED in favor of plaintiff General Insurance, as follows:

(1) Plaintiff shall be awarded a judgment against defendant Nicolaci in the amount of $4,720.59 together with interest thereon at the rate prescribed by 28 U.S.C. § 1961 from June 2, 1988.

(2) Plaintiff shall be awarded a judgment against defendant Nicolaci in the amount of $52,404.74 together with interest thereon at the rate prescribed by 28 U.S.C. § 1961 from December 14, 1988.

(3) Plaintiff shall be awarded a judgment against defendant Nicolaci in the amount of $3,870.33 together with interest thereon at the rate prescribed by 28 U.S.C. § 1961 from June 6, 1989.

(4) Plaintiff shall be awarded a judgment against defendant Nicolaci in the amount of $47,303.19 together with interest thereon at the rate prescribed by 28 U.S.C. § 1961 from December 6, 1989.

(5) Plaintiff shall be awarded a judgment against defendant Walker in the amount of $52,404.74 together with interest thereon at the rate prescribed by 28 U.S.C. § 1961 from December 14, 1988.

(6) Plaintiff shall be awarded a judgment against defendant Walker in the amount of $3,870.33 together with interest thereon at the rate prescribed by 28 U.S.C. § 1961 from June 6, 1989.

(7) Plaintiff shall be awarded a judgment against defendant Walker in the amount of $47,303.19 together with interest thereon at the rate prescribed by 28 U.S.C. § 1961 from December 6, 1989.

(8) Plaintiff shall be awarded a judgment against defendant Nicolaci for plaintiff's reasonable attorney fees in the amount of $14,373.00 and costs in the amount of $115.50.

(9) Plaintiff shall be awarded a judgment against defendant Walker for plaintiff's reasonable attorney fees in the amount of $26,695.50 and costs in the amount of $94.00.

IT IS SO ORDERED.

The Clerk of this Court is directed to enter judgment pursuant to this Order. The Clerk is further directed to send uncertified copies of this Order to all counsel of record.